IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT GENE WILL, II, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | H-07-CV-1000 |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## ORDER

On May 25, 2010, this Court denied Robert Gene Will's petition for a writ of habeas corpus. Will's federal habeas petition raised three claims: (1) he is actually innocent of capital murder; (2) his trial attorneys provided ineffective assistance by not sufficiently proving that a co-defendant committed the murder; and (3) a pervasive police presence created a prejudicial trial atmosphere. When Will had raised his first two grounds for relief in a successive state habeas application, the Texas Court of Criminal Appeals found that he had not met the state law requirements for litigating a second habeas action under section 11.071 §5(a) of the Texas Code of Criminal Procedure. On federal review, Will argued that Texas incorrectly applied its own law in rejecting his second habeas application. In the alternative, Will argued that he was actually innocent of the murder, thus forgiving the resultant federal procedural bar of his claims. The Court found that, both procedurally and substantively, Will's claims lacked merit.

Will now seeks post-judgment relief under Rule 59(e) of the Federal Rules of Civil Procedure. (Docket Entry No. 46, 47). Federal law provides an important, but limited, opportunity to reopen the proceedings after judgment. Court should use this "extraordinary remedy" only "sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). To succeed on a Rule

59(e) motion, a party "must clearly establish either a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued. Moreover, they cannot be used to argue a case under a new legal theory.'" *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (quoting *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)); *see also Dial One of the Mid-South, Inc. v. BellSouth Telecommunications, Inc.*, 401 F.3d 603, 606-07 (5th Cir. 2005). Due to the extraordinary nature of this remedy, the Fifth Circuit has found that the Rule 59(e) standard "favors denial of motions to alter or amend a judgment." *Southern Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

Will's motion for a new trial raises three separate issues. First, Will argues that legal developments since the issuance of judgment undercut the procedural bar of his first two claims. Second, Will asks the Court to reopen judgment and issue a Certificate of Appealability on his actual-innocence and prejudicial-trial-atmosphere arguments. Finally, Will argues that new evidence requires a fresh inquiry into the integrity of his capital conviction. The Court will address Will's contentions below.

## I. The Independence and Adequacy of Texas' State Procedural Law

Will argues that recent law challenges TEX. CODE CRIM. PRO. art. 11.071 § 5(a)'s viability as an adequate and independent state procedural bar. After the Court denied Will's petition, the Court of Appeals for the Fifth Circuit issued *Balentine v. Thaler*, 609 F.3d 729 (5th Cir. 2010), a case calling into question the adequacy of Texas' procedural resolution of successive habeas applications. While that decision placed Texas habeas law into question, recent developments have reconfirmed the correctness of this Court's decision.

To summarize, the initial panel in the *Balentine* case held that

> [w]here the Court of Criminal Appeals dismisses a successive application with this boilerplate language, [a federal court] cannot determine whether the decision relied on a state-law defect or a finding that federal constitutional law was not violated. Consequently, the Court of Criminal Appeals' order must be construed as having reached the merits of the federal constitutional issue.

*Balentine*, 609 F.3d at 743. Since then, the *Balentine* panel withdrew its initial opinion and reached an opposite result. The subsequent *Balentine* opinion reaffirmed the adequacy of TEX. CODE CRIM. PRO. art. 11.071 §5(a) as an adequate and independent bar to federal review. *See Balentine v. Thaler*, 626 F.3d 842, 857 (5th Cir. 2010). The Fifth Circuit has refused *en banc* consideration of the new decision. *See Balentine v. Thaler*, 629 F.3d 470 (5th Cir. 2010). Recent developments thus confirm that art. 11.071 §5(a) may foreclose federal review.

As in the revised *Balentine* opinion, nothing in this case suggests that the Court of Criminal Appeals made anything more than a procedural determination in rejecting Will's successive petition. The Court, therefore, will not reconsider whether state law operates as an adequate and independent procedural bar of Will's claims.

## II. Certificate of Appealability

Will asks this Court to reconsider the refusal to certify any issues for appellate consideration. The Anti-Terrorism and Effective Death Penalty Act bars appellate review of a habeas petition unless the district or circuit courts authorize specific issues for appeal. *See* 28 U.S.C. § 2253(c); FED.R.APP.P. Rule 22(b). Will argues that the Court should designate two questions for appellate review: (1) whether actual innocence forms a cognizable basis for federal habeas relief and (2) whether a strong police presence at trial prejudiced his constitutional rights. In his Rule 59(e) motion, Will only raises arguments relating to those issues that the Court considered before

3

judgment. Settled Supreme Court and Fifth Circuit precedent currently forecloses relief on those claims. As jurists of reason would not debate the disposition of his arguments, the Court will deny his Rule 59(e) motion on those claims.

### III. New Evidence

Will's production of new evidence raises the most troubling issues in his Rule 59(e) motion. Will's defense at trial tried to pin the murder on his co-perpetrator Alan Rosario. As the centerpiece of Will's defense, Harris County Jail inmate Victor Coronado testified that Rosario confessed to him. Rosario allegedly told Coronado that

> they were stripping a car trying to get the rims, stereo system out of it and a unit pulled up . . . and that he had no choice but to shoot the cop. It was just instinct and he ran. He eluded police one time by slipping through them and when he got closer to home, that's when he was arrested.

Tr. Vol. 26 at 10-11. In his successive state habeas application and federal petition, Will presented affidavits from three inmates – Antonio Riojas, Rene Gonzales, and Richard Lucio – in an effort to show that Rosario actually shot the police officer. These inmates, while adding new details such as that Rosario claimed to have shot the handcuffs off Will, generally followed the substance of Coronado's testimony.

Because the Court of Criminal Appeals applied art. 11.071 §5(a) to bar Will's ineffective-assistance claim on successive state habeas review, Will relied on the inmates' affidavits both to show that (1) his actual innocence would forgive the procedural bar and (2) trial counsel's representation fell below constitutional expectations. This Court held that the affidavits did not constitute new, reliable evidence that would persuasively overcome procedural impediments. (Docket Entry No. 44 at 21-25). In a related vein, the Court found that trial counsel made a zealous

effort to develop inmate testimony at trial but found that the inmates were not credible. (Docket Entry No. 44 at 31). Alternatively, the Court found no prejudice because the inmates' affidavits were only cumulative of Coronado's testimony. (Docket Entry No. 44 at 32).

For the first time in his Rule 59(e) motion, Will has submitted an affidavit from his former girlfriend Brenda Venegas. Ms. Venegas describes how Rosario came to Will's apartment immediately after the murder, told her how he freed Will and killed the victim, laundered his clothing, and had blood on his shoe. Ms. Venegas attests that she gave that information to the police soon after Will's arrest, but no one contacted her about the case until 2010. Will faults the police, the prosecution, and trial counsel for their handling of the information Ms. Venegas could have and did provide. Importantly, the limited record before the Court does not suggest that trial counsel contacted Ms. Venegas. Will's pleadings, without explicitly raising such claims, indicate a hope that Ms. Venegas' affidavit would support viable ineffective-assistance and prosecutorial-misconduct grounds for relief.

To reopen this Court's judgment, Will must make a threshold showing that manifest error or newly discovered evidence allows review. *See Simon*, 891 F.2d at 1159. Not all the information in Ms. Venegas' affidavit is new. For instance, when defense counsel called Ms. Venegas' friend Natasha Helalian as a witness in the guilt/innocence phase she testified that Rosario came to Will's apartment after the murder, appeared nervous, washed his clothing, and made incriminating statements. Tr. Vol. 25 at 179-202. Ms. Venegas also conveys information similar to that provided by Coronado and the other inmates:

> [Rosario] told me that he got away from the police officer who was chasing him. He said that he came across [Will] and the other police officer. [Will] was handcuffed. [Rosario] told me he snuck up behind the police officer and shot him. [Rosario] tried

5

to shoot the handcuffs off [Will], but he missed and shot [Will] in his hand instead. (Docket Entry No. 46, Declaration of Brenda Venegas signed June 17, 2010).[1]

Her affidavit differs, however, in some important respects. Her affidavit does not carry with it the suggestion that Rosario boasted of the crime, but he feared imminent arrest for his part in the killing. Ms. Venegas alleges that she told the police about Rosario's statements early on, but that neither the prosecution nor the defense contacted her before trial. In fact, Will only became aware of her proposed testimony after an investigator tried a different way of trying to locate her.[2] Most

---

[1] At the same time, Ms. Venegas' affidavit still creates dissonance with well-established facts in the trial record. As the Court observed, the trial evidence painted a picture that makes it difficult to pin the murder on Rosario:

> The Court does not look at the affidavits in isolation. The Court must consider the reliability of the affidavits in the context of the trial evidence and trial counsel's reasons for not calling each affiant. For example, the facts of the case did not strongly support Will's claim that Rosario escaped pursuit by heading in the opposite direction from him, backtracked a distance of hundreds of yards in seconds, snuck up on Deputy Hill undetected, shot him, gave Will the murder weapon, and then slipped away. The prosecution strongly asserted that Rosario did not have enough time to have been the shooter. The affidavits make the incredible claim that the police knew Rosario killed one of their own but framed Will nonetheless. The trial evidence showed that Will shot himself in the hand, not that he was accidentally shot as someone removed the handcuffs from him. The affidavits do not diminish the force of inculpatory trial testimony such as that Will told a woman that he shot a police officer.

(Docket Entry No. 44 at 23).

[2] To summarize, Will has also submitted an affidavit from Rebecca Dobkin, the person who secured Ms. Venegas' new affidavit. (Docket Entry No. 64, Declaration of Rebecca Dobkin signed January 14, 2011). Ms. Dobkin, a capital habeas investigator with the Office of the Federal Public Defender in the Central District of California, has provided *pro bono* support to Will's attorneys. Ms. Dobkin describes her sporadic efforts over several years to find Ms. Venegas. Only on May 28, 2010, three days after this Court denied habeas relief but before she was aware of that ruling, did she think to contact Ms. Venegas through the social media website Facebook.com. While obviously no one pursued that line of investigation before judgment, it is not clear that Ms. Venegas'

(continued...)

significantly, Respondent has not identified any significant concern that would impair Ms. Venegas' personal credibility. Given Ms. Helalian's trial testimony mentioning Ms. Venegas' presence at the apartment after the murder and her suggestion that Rosario made incriminating statements there, it appears that a reasonable investigation would include looking into Ms. Venegas' potential testimony. A defense attorney could view her testimony as an important tool in blaming the murder on Rosario.

The emergence of newly discovered facts may allow reconsideration of the parties' prejudgment arguments. While Ms. Venegas' affidavit raises troubling questions, its impact on Will's case remains unclear. Several procedural and substantive issues remain underdeveloped. The Court, therefore, will entertain oral argument to help clarify several questions. The parties should be prepared to discuss the following matters:

(1) Does Ms. Venegas' affidavit amount to newly discovered evidence, rather than newly developed evidence, that would allow this Court to reconsider its judgment under Rule 59(e)?

(2) Does Will intend his reliance on Ms. Venegas' affidavit to support the claims he raised in his federal habeas petition or to constitute a new theory for relief?

(3) Insofar as Will intends Ms. Venegas' affidavit to bolster his prejudgment arguments, how would her account support the specific cognizable claims he raised in his federal petition?

(4) Insofar as Will intends to use Ms. Venegas' affidavit to support new grounds for relief, can this Court reopen judgment to consider a new constitutional claim that he has introduced this late in the adjudicative process?

(5) Does the insertion of a new constitutional claim at this stage amount to the inception of successive federal habeas proceedings under 28 U.S.C. § 2244(b)(2)?

(6) If Ms. Venegas' affidavit raises new constitutional grounds for relief, can the

---

[2] (...continued)
affidavit was unavailable beforehand as understood by federal law.

Court stay and abate this action to allow Will to present legal arguments to the Texas state courts in the first instance? Does another state or federal procedural mechanism exist to allow consideration of her affidavit?

## IV. Conclusion

The Court has considered the legal and factual support for Will's post-judgment arguments. The Court **DENIES IN PART** Will's Rule 59(e) motions (Docket Entry Nos. 46, 48) as discussed above. The Court will schedule a hearing for oral argument addressing Ms. Venegas' affidavit by separate order.

In addition, the Court **GRANTS** Will's pending motion for an extension of time to file a reply. (Docket Entry No. 61).

**SIGNED** at Houston, Texas, on this 10 day of March, 2011.

_____
KEITH P. ELLISON
United States District Judge