IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ROBERT GENE WILL, II,　　　　　§
　　　　　　　Petitioner,　　　　§
　　　　　　　　　　　　　　　　§
v.　　　　　　　　　　　　　　　§　　　　No. 07–1000
　　　　　　　　　　　　　　　　§　　**CAPITAL LITIGANT**
RICK THALER,　　　　　　　　　§　　　Hon. Keith Ellison
Director, Texas Department of　　　§
Criminal Justice, Correctional　　　§
Institutions Division,　　　　　　 §
　　　　　　　Respondent.　　　　§

## RESPONDENT THALER'S *MARTINEZ* BRIEF

Will, a Texas death–row inmate, unsuccessfully challenged his conviction and sentence in federal habeas proceedings in this Court. See 28 U.S.C. § 2254 (West 2012). After direct and collateral state review and collateral federal review was completed, the parties were asked to brief the applicability of a recent Supreme Court decision, *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), to Will's litigation. *Martinez* offers Will no relief. In *Martinez,* the Supreme Court held that

> Where, *under state law*, claims of ineffective assistance of trial counsel *must* be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of *ineffective assistance at trial* if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id.* at 1320 (emphasis added). First, *Martinez* does not give this Court jurisdiction to hear Will's successive habeas petition absent authorization from the Court of Appeals. Second, the Fifth Circuit has held that *Martinez*

does not constitute the extraordinary circumstances necessary to warrant relief under 60(b)(6). Third, as the Fifth Circuit has held, *Martinez* is not applicable in jurisdictions like Texas where there is more than one avenue to raise an ineffective–assistance–of–counsel (IAC) at trial claim. Fourth, because the trial–related IAC claim is not "substantial," Will cannot show cause to excuse default.

## WILL'S ALLEGATIONS

Will moved for an amendment of this Court's judgment denying habeas relief, claiming he received ineffective assistance when trial counsel failed to investigate and present evidence of his actual innocence, and claiming that ineffective assistance of state habeas counsel excused the procedural default of his barred IAC–at–trial claims. Motion, ECF No. 102. This Court determined that it lacked jurisdiction because Will was actually presenting a successive habeas petition without having received authorization to do so. Order, ECF No. 106. At issue now is whether, in light of *Martinez*, a successive petition can be heard without authorization and then, whether this Court must excuse the default and must review the unexhausted IAC claim on the merits. In the alternative, should this Court obey the settled precedent of the Fifth Circuit, Will asks to add yet another new claim, this time an allegation of ineffective assistance of appellate counsel. This likewise would be new, unexhausted, procedurally barred, and meritless.

2

## ARGUMENT

**I.**   ***Martinez v. Ryan* Does Not Change the Fact that This Court Does Not Have Jurisdiction to Hear Will's New Claims. His Rule 60(b) Motion is Still a Successive Petition Barred Under 28 U.S.C. § 2244(b)(2)(A)-(B)(ii) and *Gonzalez v. Crosby*.[1] Because Will Failed to Seek Authorization from the Fifth Circuit to File It, this Court Lacks Jurisdiction to Reopen the Case in this Court, or to Grant Discovery, a Hearing, or to Make Findings.**

Because Will's motion was actually a successive petition without prior authorization, this Court still lacks jurisdiction to do anything with Will's case, regardless of whether *Martinez* applies in Texas. Will complains that trial counsel should have handled the green jacket differently and made different arguments about Rosario's statements, and that appellate counsel should have raised these arguments on direct appeal. These are new, procedurally defaulted claims for substantive relief, not complaints about the integrity of the federal habeas proceedings. Order, ECF No. 106. "As the writ of habeas corpus does not perform the office of a writ of error or an appeal, [the facts establishing guilt] cannot be re-examined or reviewed in this collateral proceeding." *Ex parte Terry*, 128 U.S. 289, 305 (1888) (emphasis in original). "Federal courts are not forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983).

---

[1]   545 U.S. 524 (2005).

## II.    The *Martinez* Decision is Not an "Extraordinary Circumstance" Justifying Rule 60(b) Relief.

Even if it applied to Texas, the *Martinez* opinion does not constitute an extraordinary circumstance sufficient for Rule 60(b)(6) relief. The Supreme Court has explicitly held that "not every interpretation of the federal statutes setting forth the requirements for habeas provides cause for reopening cases long since final." *Gonzalez*, 545 U.S. at 536. As a result, the Fifth Circuit has consistently held that "[a] change in decisional law after entry of judgment does not constitute exceptional circumstances and is not alone grounds for relief from a final judgment" under Rule 60(b)(6). *See Adams v. Thaler*, 679 F.3d 312, 319 (5th Cir. 2012); *Hess v. Cockrell*, 281 F.3d 212, 216 (5th Cir. 2002); *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 747–48 (5th Cir. 1995); *see also Hernandez v. Thaler*, 630 F.3d 420, 430 (5th Cir. 2011) (concluding that the Fifth Circuit's later change in law regarding the calculation of AEDPA's limitations period—which would have rendered petitioner's habeas petition timely—did not constitute "extraordinary circumstances").

The *Martinez* case did not yield a new rule of constitutional law nor is it to be applied retroactively. 132 S. Ct. at 1315. In fact, the Supreme Court discussed at length the consequences of a new rule of constitutional law and firmly indicated that *Martinez* was only a "qualification" of the ruling in *Coleman. Id.* at 1319–20; *see also Foster v. Thaler*, No. 12–70026, 2012 WL 4328336 (5th Cir. Sept. 21, 2012) (unpublished) (rejecting the argument that *Martinez* constitutes an extraordinary circumstance). *Adams* held as a matter of law that *Martinez* was a change in decisional law, and changes in

4

decisional law do not constitute extraordinary circumstances for the purposes of Rule 60(b)(6).

## III.  Even Assuming the *Martinez* Decision Constitutes an "Extraordinary Circumstance," It Would Still Be Inapplicable to Proceedings in Texas.

Will argues that *Martinez* provides the procedural vehicle looked for by this Court to excuse his procedural default and review his new IAC–at–trial claims on the merits. Brief, ECF No. 124, at 3. Will correctly notes that in *Martinez*, the Supreme Court found an exception to *Coleman*'s rule that an error by an attorney in postconviction proceedings does not qualify as cause to excuse a procedural default. 132 S. Ct. at 1315. But the Supreme Court repeatedly stated that its holding is limited and that "the rule of *Coleman* still governs in all but the limited circumstances recognized here." *Id.* at 1320–21.

### A.  Will's emphasis on alleged "practical" similarities between Texas and Arizona law regarding the litigation of ineffective assistance of trial counsel claims is misplaced. Filing an IAC–at–trial claim prior to state habeas in Texas is not the ridiculous proposition Will would have the Court believe.

*Martinez*, by its express language, applies only to jurisdictions imposing categorical bars to the litigation of trial IAC claims earlier than collateral proceedings; it does not extend to jurisdictions in which it may be preferable, in defense counsel's estimation, to defer litigation of trial IAC claim until collateral review. 132 S. Ct. at 1319–21. Moreover, *Martinez* does not require courts to assess each case individually to determine whether *Martinez* applies, nor does it distinguish between types of IAC claims or the types of proof needed to establish them. *Martinez* makes no exception for

5

litigants that encounter practical difficulties in litigating trial IAC claims before state habeas proceedings. If the Supreme Court really wanted *Martinez* to apply every time a prisoner defaults an "extra–record" IAC–at– trial claim, it surely would have said so. *Cf. Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("[I]t does not, one might say, hide elephants in mouseholes."). In any event, the Supreme Court would not characterize a holding that breathtakingly broad as "narrow"; nor would it "repeatedly (and exclusively) refer[]" to the deliberate choices that Arizona made, rather than the practicalities of vindicating Martinez's particular IAC claim. *Ibarra v. Thaler*, 687 F.3d 222, 226 (5th Cir. 2012), reh'g denied (Aug. 17, 2012).

Texas law does not require a defendant to raise an IAC claim in an initial-review collateral proceeding. *See Lopez v. Texas*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011) (holding that a claim of ineffective assistance of counsel may be considered on direct appeal). The *Martinez* Court repeatedly noted that the exception it created was limited to jurisdictions (such as Arizona) that choose to *bar* a defendant from raising trial IAC claims on direct appeal. 132 S. Ct. at 1318 ("By *deliberately* choosing to move trial-ineffectiveness claims outside the direct appeal process, where counsel is constitutionally guaranteed, the State significantly diminishes prisoners' ability to file such claims."), 1320 ("Our holding here addresses only the constitutional claims presented in this case, where the State *barred* the defendant from raising the claims on direct appeal."), 1320 ("Where, under *state law*, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding. . .") (italics added). Since Texas, unlike

6

Arizona, has not deliberately opted to prohibit defendants from raising *Strickland* claims on direct appeal, *Coleman* still applies. Thus, to find that *Martinez* constitutes cause to excuse Will's procedural default, this Court would have to contradict settled precedent finding *Martinez* to be inapplicable in Texas.

Texas rules and statutes allow the individual to raise such claims not only in collateral proceedings but on appeal or in a new-trial motion, both proceedings in which constitutionally effective counsel are guaranteed. Indeed, under Texas law, after the trial court imposes a death sentence, the prisoner is given two new independent attorneys, one for appeal, one for habeas proceedings, and each may raise issues of trial counsel's effectiveness. State statute requires the trial court, as "soon as practicable after a death sentence is imposed," to appoint counsel to represent an indigent defendant on appeal and, if appropriate, to apply for certiorari review. Tex. Code Crim. Proc. art. 26.052(j) (West 2012). The appointed counsel must have extensive appellate practice, including significant experience in capital appeals, and must meet other competency requirements. *Id.* at 26.052(d)(3). And unless the defendant and trial counsel on the record request that trial counsel be reappointed for the appeal and unless the trial court finds good cause for such reappointment, the trial court may not reappoint trial counsel for the appeal. *Id.* at 26.052(k). Thus, a death-sentenced prisoner receives a new direct-appeal attorney unless he affirmatively requests to retain his trial counsel and shows good cause for that choice. Will's assertions to the contrary, see Brief at 35, altogether ignore Article 26.052 and are flatly false.

Almost simultaneously with the appointment of direct-appeal counsel, the trial court must appoint state–habeas counsel under Texas Code of Criminal Procedure Article 11.071. In particular, "immediately after judgment is entered" on a death sentence, the court must conduct a hearing to determine "whether the defendant desires appointment of counsel for the purpose of a writ of habeas corpus." Tex. Code Crim. Proc. art. 11.071, § 2(b). "At the earliest practical time, but in no event later than 30 days, after the convicting court" finds that the capital prisoner wants state-habeas counsel, the court must appoint one or more competent attorneys to assist him. *Id.* § 2(c); *see also id.* § 2(f); Tex. Govt. Code §§ 78.054, 78.056(a). And state–habeas counsel must investigate the factual and legal grounds for a trial IAC claim both "*before* and after the appellate record is filed." Tex. Code Crim. Proc. art. 11.071, § 3(a) (italics added).

Further, a prisoner's habeas application must be filed within 180 days of habeas counsel's appointment or forty–five days after the State files its appellate brief, whichever is later. *See* art. 11.071, § 4(a). As a practical matter, the habeas application will be filed before the decision of the Court of Criminal Appeals on direct review and before the applicant's petition for writ of certiorari. Hence, at least two independent attorneys, appellate counsel and habeas counsel, will be able to challenge the actions of trial counsel before the prisoner loses his constitutional right to counsel at the conclusion of direct review.

The Texas rules also provide the tools for developing and raising ineffective–assistance claims on direct review. Before the appeal of a death

sentence is transferred automatically to the Court of Criminal Appeals, *see* Tex. Code Crim. Proc. art. 37.071, § 2(h) (West 2012), defense counsel may move for a new trial. *See* Tex. R. App. P. 21; *see also Reyes v. State*, 849 S.W.2d 812 (Tex. Crim. App. 1993). The convicting court can take evidence by affidavit or otherwise in the motion proceedings to adduce facts not in the trial record. *See* Rule 21.7. If the motion raises matters—including ineffective-assistance allegations—that cannot be determined from the trial record, the convicting court must hold a hearing. *See Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). A trial court abuses its discretion for failing to hold such a hearing if a defendant presents a motion that raises matters that may not be determined from the record. Tex. R. App. Proc. 21.7; *Holden*, 201 S.W.3d at 763-64. Texas defendants have seventy–five days to develop and then present such claims to the trial court.[2] Tex. R. App. Proc. 21.6. Therefore, because Texas defendants such as Will have two outlets to develop and raise trial IAC claims, the narrow exception created in *Martinez* is clearly inapplicable.

Will's own pleading proves that Texas, unlike Arizona, does not categorically require trial IAC claims to be raised on collateral review when he notes at least 47 successful cases where trial IAC was found on direct appeal. Brief, ECF No. 124, at 61. Death-sentenced prisoners have used new-trial procedures to develop evidence regarding trial counsel's failure to

---

[2] A Texas defendant has thirty days to file the motion and must "present" the motion within ten days of filing it, unless the trial court permits it to be presented and heard within the seventy-five day period it has to rule on the motion. Tex. R. App. Proc. 21.4, 21.6, and 21.8.

investigate and present mitigating evidence at punishment. *See Armstrong v. State*, No. AP–75706, 2010 WL 359020, at *5–*6 (Tex. Crim. App. Jan. 27, 2010). Another non-capital inmate used the new-trial proceedings to develop similar evidence. *See Milburn v. State*, 15 S.W.3d 267, 269–70 (Tex. App.— Houston [14th Dist.] 2000, pet. ref'd). Yet another used new-trial proceedings to produce affidavits, followed by a live evidentiary hearing, regarding trial counsel's strategic decisions. *See Morales v. State*, 217 S.W.3d 731, 734–35 (Tex. App.—El Paso 2007), *rev'd*, 253 S.W.3d 686 (Tex. Crim. App. 2008). Indeed, the Court of Criminal Appeals is explicit: A habeas corpus proceeding "is not the only mechanism for developing an ineffectiveness claim." *State v. Jones*, No. 678-02, 2004 WL 231309, at *8 (Tex. Crim. App. Jan. 28, 2004). An increasing number of cases, the state court said, develop the necessary record by using new–trial proceedings. *Id.*, at 2004 WL 231309, at *8.[3]

---

[3]      *See, e.g., Holden*, 201 S.W.3d at 764; *McFarland v. State*, 928 S.W.2d 482, 499–507 (Tex. Crim. App. 1996) (abrogated on other grounds by *Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998)); *Garcia v. State*, 887 S.W.2d 862, 880–81 (Tex. Crim. App. 1994) (abrogated on other grounds by *Hammock v. State*, 46 S.W.3d 889 (Tex. Crim. App. 2001)); *Motley v. State*, 773 S.W.2d 283, 290–92 (Tex. Crim. App. 1989); *Butler v. State*, 716 S.W.2d 48, 55–57 (Tex. Crim. App. 1986); *State v. Bennett*, No. 05-11-00252-CR, 2012 WL 11181, at *1 (Tex. App.—Dallas Jan. 4, 2012, no pet.); *State v. Mayfield*, Nos. 14-09-00357-CR, 14-09-00358-CR, 2010 WL 2373274, at *10–14 (Tex. App.—Houston [14th Dist.] June 15, 2010, no pet.); *Pratt v. State*, No. 04-09-00070-CR, 2010 WL 546529, at *5–*9 (Tex. App.—San Antonio Feb. 17, 2010, pet. ref'd); *State v. Choice*, 319 S.W.3d 22, 23 (Tex. App.—Dallas 2008, no pet.); *Rosa v. State*, Nos. 05-04-00558-CR, 05-04-00571-CR, 2005 WL 2038175, at *2–*4 (Tex. App.—Dallas Aug. 25, 2005, pet. ref'd); *State v. Medina*, No. 03-02-00572-CR, 2003 WL 21939417, at *2 (Tex. App.—Austin Aug. 14, 2003, pet. ref'd); *State v. Papay*, No. 05-01-01124-CR, 2002 WL 176359, at *4 (Tex. App.— Dallas Feb. 5, 2002, pet. ref'd ); *State v. Kelley*, 20 S.W.3d 147, 155 (Tex. App.— Texarkana 2000, no pet.); *State v. Pilkinton*, 7 S.W.3d 291, 293 (Tex. App.— Beaumont 1999, pet. ref'd); *State v. Gill*, 967 S.W.2d 540, 543 (Tex. App.—Austin

Recognizing the importance of such new-trial proceedings, state law has determined that counsel is constitutionally guaranteed in such proceedings. *Cooks v. State*, 240 S.W.3d 906, 911 (Tex. Crim. App. 2007). In fact, counsel's failure to take advantage of such proceedings can itself lead to an ineffective–assistance claim. *See Rogers v. State*, No. 14–09–00665–CR, 2011 WL 7290492, at *2–*4 (Tex. App.—Houston [14th Dist.] Feb. 8, 2011, no pet.) (abating appeal to allow defendant to present facially plausible ineffective-assistance claim in new–trial motion where defendant denied counsel to present such motion); *Prudhomme v. State*, 28 S.W.3d 114, 121 (Tex. App.—Texarkana 2000, no pet.) (abating appeal and remanding to trial court for new–trial motion where defendant deprived of counsel during the new-trial motion period); *Massingill v. State*, 8 S.W.3d 733, 737–38 (Tex. App.—Austin 1999, no pet.) (abating appeal, remanding to trial court for hearing on new–trial motion where defendant denied counsel during new-trial motion period).

And while new–trial proceedings allow a defendant to develop a post-trial record, such proceedings are not required before a defendant raises ineffective-assistance claims on appeal. The state courts can and do review the merits of such claims on appeal. *See, e.g., Holberg v. State*, 38 S.W.3d 137

---

1998, pet. ref'd); *Howard v. State*, 894 S.W.2d 104, 109 (Tex. App.—Beaumont 1995, pet. ref'd); *State v. Thomas*, 768 S.W.2d 335, 337 (Tex. App.—Houston [14th Dist.] 1989, no pet.).

(Tex. Crim. App. 2000)[4] (abrogation on other grounds recognized by *Meadoux v. State*, 325 S.W.3d 189 (Tex. Crim. App. 2010)).[5]

Practically speaking, raising an ineffective–assistance claim in a new-trial motion or on appeal inures to the defendant's benefit. If the claim fails on appeal for lack of evidence, he may reassert the claim in collateral proceedings, perhaps with additional evidence. *See Rylander v. State*, 101 S.W.3d 107, 111 n.1 (Tex. Crim. App. 2003); *Thompson v. State*, 9 S.W.3d 808, 814–15 (Tex. Crim. App. 1999).

> **B.   Settled circuit precedent reveals that *Martinez* does not apply in Texas.   Further, the exception *Martinez* makes to *Coleman* is informed by equitable principles, which cut against Will's arguments for relief.**

The Fifth Circuit has repeatedly rejected the notion that *Martinez* applies to Texas cases because "Texas procedures do not mandate that

---

[4]    Full text on Westlaw only.

[5]    *See, e.g., Gobert v. State*, No. AP–76345, 2011 WL 5881601, at \*10–\*11 (Tex. Crim. App. Nov. 23, 2011); *Fratta v. State*, No. AP–76188, 2011 WL 4582498, at \*13 (Tex. Crim. App. Oct. 5, 2011); *Medina v. State*, No. AP-76036, 2011 WL 378785, at \*15 (Tex. Crim. App. Jan. 12, 2011); *Skinner v. State*, 293 S.W.3d 196, 202–03 (Tex. Crim. App. 2009); *Mata v. State*, 226 S.W.3d 425, 432–33 (Tex. Crim. App. 2007); *Shore v. State*, No. AP–75049, 2007 WL 4375939, at \*15 (Tex. Crim. App. Dec. 12, 2007); *Phillips v. State*, 992 S.W.2d 491, 494–95 (Tex. Crim. App. 1999); *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992); *Gish v. State*, No. 02-09-00034-CR, 2011 WL 167076, at \*3-\*6 (Tex. App.—Fort Worth Jan. 13, 2011, no pet.); *Smith v. State*, No. 05-08-01115-CR, 2010 WL 3245438, at \*5–\*6 (Tex. App.—Dallas Aug. 18, 2010, pet. ref'd); *Curnel v. State*, No. 2-08-308-CR, 2010 WL 323557, at \*6–\*7 (Tex. App.—Fort Worth Jan. 28, 2010, pet. ref'd); *Alexander v. State*, Nos. 09-08-00372-CR, 09-08-00373-CR, 2009 WL 4681369, at \*6 (Tex. App.—Beaumont Dec. 9, 2009, pet. ref'd); *Bergara v. State*, No. 14-07-00938-CR,2009 WL 2476513, at \*12–\*14 (Tex. App.—Houston [14th Dist.] Aug. 13, 2009, pet. ref'd); *Gonzalez v. State*, No. 04-07-00804-CR, 2008 WL 5083125, at \*4 (Tex. App.—San Antonio Dec. 3, 2008, pet. ref'd).

ineffectiveness claims be heard in the first instance in habeas proceedings." *Ibarra*, 687 F.3d at 227 (noting that such claims could be brought "through counseled motions for new trial and direct appeal"); *see also Foster*, 2012 WL 4328336 (rejecting an identical request for Rule 60(b) relief based on *Ibarra*); *Gates v. Thaler*, 2012 WL 2305855 (5th Cir. June 19, 2012) (unpublished) (holding that *Martinez* does not alter the cause and prejudice analysis in Texas cases) *en banc reh'g denied* (5th Cir. Sept. 14, 2012); *Adams*, 679 F.3d at 317 n.4 ("Texas does not require defendants to raise an ineffective assistance of trial counsel claim only in state habeas proceedings," and such claims are "often brought on direct appeal, with mixed success").

The Supreme Court intentionally made *Martinez* a "narrow exception" to *Coleman*. 132 S. Ct. at 1315. For twenty–one years, the rule in *Coleman* prohibiting error by an attorney in postconviction proceedings from constituting cause to excuse a procedural default has protected state court judgments from a never-ending repetition of IAC claims. With the enactment of the AEDPA, "Congress wished to curb delays, to prevent 'retrials' on federal habeas, and to give effect to state convictions to the extent possible under law." *Williams v. Taylor*, 529 U.S. 362, 386 (2000). It was particularly enacted to "reduce delays in the execution of state and federal criminal sentences, particularly in capital cases." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (citation omitted). The rules governing exhaustion, procedural default and successive petitions "are [] important means by which [these] goals for reform would be achieved." *Williams*, 529 U.S. at 404. The Court has

13

specifically recognized the cost to the criminal justice system when petitioners are allowed to game the system as here:

> Far more severe are the disruptions when a claim is presented for the first time in a second or subsequent federal habeas petition. If "[c]ollateral review of a conviction extends the order of trial for both society and the accused," the ordeal worsens during subsequent collateral proceedings. Perpetual disrespect for the finality of convictions disparages the entire criminal justice system.

*McCleskey*, 499 U.S. at 492 (internal citation omitted). Without the *Coleman* rule, there would be no end to attacks on a judgment because every new attack could claim the alleged ineffectiveness of the prior lawyer as cause for not having raised it sooner. *See* 501 U.S. at 754. The *Martinez* Court respected that reality and carefully noted that:

> [t]he rule of *Coleman* governs in all but the limited circumstances recognized here. The holding in this case . . . does not extend to attorney errors in any proceeding beyond *the first occasion* the State *allows* a prisoner to raise a claim of ineffective assistance at trial, *even though that initial–review collateral proceeding may be deficient for other reasons.*

132 S. Ct. at 1320 (italics added). As such, *Martinez* only applies to states which "require[] a prisoner to raise an ineffective-assistance–of–trial–counsel claim in a collateral proceeding." *Id.* at 1318.

The Supreme Court noted that Arizona, the state at issue in *Martinez*, shunted IAC–at–trial claims from the direct review process, where counsel is constitutionally guaranteed, to the state habeas process, where it is not. *Id.* at 1318. Arizona's choice lessened a prisoner's ability to file such a claim because an uncounseled prisoner was likely "unlearned in the law" and

14

unable to "comply with the State's procedural rules." *Id.* at 1315, 1317, 1318. Using its powers of equity, the Court imposed a consequence for Arizona's choice: where a prisoner failed to assert an ineffective–assistance claim in initial state habeas proceedings—the "'one and only'" forum that Arizona provided for hearing such a claim—and where the prisoner later raised the claim in federal proceedings, the state could not assert default. *Id.* at 1315, 1318 (quoting *Coleman*, 501 U.S. at 756).

Texas law differs from that of Arizona. While Arizona bars a prisoner from raising an ineffective–assistance–of–trial–counsel claim on direct review, *see State v. Spreitz*, 39 P.3d 525, 527 (2002), Texas has no such limit. But where states like Arizona limit such claims to collateral proceedings, the equities shift. *See Martinez*, 132 S. Ct. at 1317. The state is, in effect, forcing the petitioner into a forum where he is not guaranteed counsel. *See id.* And where the state so limits a prisoner, *Martinez*'s equitable remedy applies. *See Ibarra*, 687 F.3d at 226. Because Texas has no such rule, the equities implicated by *Martinez* do not apply.

Will does not merit equitable relief because he has neither displayed diligence nor clean hands.  Until his Rule 60(b) motion filed in March 2012, Will had never before asserted that either trial counsel or state habeas counsel for the initial writ was somehow at fault for not investigating or raising a claim related to the green jacket, which is not "new" evidence in any respect. Nor did he allege ineffectiveness for failing to present Rosario's statements, or IAC at appeal. Nor did he ever allege any ineffectiveness by state habeas counsel.

15

Will was convicted and sentenced to death in 2002. Immediately following that conviction, his conviction and sentence were automatically appealed to the Court of Criminal Appeals. Will then sought state habeas relief, not once but twice. He also sought federal habeas relief. Each time, given that this evidence has long been available to him, Will could have—but did not—raise either the trial IAC claims pertaining to the green jacket or Rosario's statements, or the claim of IAC at state habeas he now raises in this Court. Instead, he waited until some two years after this Court had denied federal habeas relief to raise them. Nor did he return to the state court to exhaust them. Rather, he attempted to raise them before this Court in a successive petition labeled as a Rule 60(b) motion, without first seeking authorization from the Fifth Circuit. What Will fails to see is that past and present federal habeas counsel had *ten years* in which to raise these claims. They should have been raised well before his case had passed on to the circuit court.

This Court granted Will discovery and an evidentiary hearing and permission to supplement the record with additional testimony in which Will was to develop his claims of IAC at trial and actual innocence. Orders, ECF No. 30, 37, 84. The court went on to deny federal habeas relief. Order, ECF No. 88. Throughout all of these proceedings, there has never been any attempt—until this Rule 60(b) motion—to raise the claims he now contends should get the benefit of *Martinez*. But *Martinez* carved out an equitable exception to the general rule that ineffective assistance of state habeas counsel cannot serve as cause so as to overcome a procedurally defaulted

16

claim.  Thus, equitable principles of diligence and clean hands should inform the decision to apply it. Here, Will shows neither.

This circuit already determined that the *Martinez* exception does not apply to the Texas system. *See Ibarra*, 687 S.W.3d at 227. Other circuits and district courts have also interpreted *Martinez* narrowly, applying the exception only where the state limits ineffective-assistance claims to postconviction proceedings. *See Dansby v. Hobbs*, No. 10-1990, 2012 WL 3870571, at *3 (8th Cir. Sept. 7, 2012) (finding *Martinez* not applicable where Arkansas law allows prisoner to raise ineffective-assistance claim on appeal); *Banks v. Workman*, No. 10–5125, No. 2012 WL 3834733, at *12–*13 (10th Cir. Sept. 5, 2012) (same; interpreting Oklahoma law); *Gill v. Atchison*, No. 11 C 7868, 2012 WL 2597873, at *5 (N.D. Ill. July 2, 2012); *Arthur v. Thomas*, No. 2:01–CV–0983–LSC, 2012 WL 2357919, at *9 (N.D. Ala. June 20, 2012).

Hence, the system followed in Texas—allowing a defendant to raise trial IAC claims in a new-trial motion, on appeal, or in habeas proceedings—takes the state out of the exception carved out in *Martinez*. Consequently, in addition to contradicting direct Fifth Circuit precedent finding *Martinez* to be inapplicable in Texas, this Court would have to construe Texas precedent in a way that "contradict[s] a recent decision of the highest state court" in order to grant relief. *Lords Landing Village Condominium Council of Unit Owners v. Continental Insurance Co.*, 520 U.S. 893, 896 (1997). This Court can ignore the resulting procedural bar only if it is willing to second-guess Texas's high court's interpretation of its own law, an undertaking for which it is ill-suited.

*See e.g.*, *Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011) (stating that the Court has repeatedly held that "federal habeas corpus relief does not lie for errors of state law.")(citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).

    **C.**    ***Ibarra* remains clear and binding precedent.**

Will now points to the Supreme Court's stay of the August 22, 2012 execution date of John Lezell Balentine as evidence that *Ibarra* no longer binds this Court. Brief, ECF No. 124, at 38, 51, 67. Will's arguments have no merit.

Balentine challenged his state capital murder conviction through a federal habeas corpus petition. *Balentine I*, 626 F.3d at 845. Balentine argued that he had been denied his Eighth Amendment right to individualized sentencing because no mitigating evidence was presented at his trial. *Id.* at 844–45. The district court denied the petition, finding Balentine's Eighth Amendment claim to be unexhausted, procedurally defaulted under state law, and procedurally barred from federal review. *Id.* The Fifth Circuit affirmed. *Id.* at 857.

Before his scheduled execution, citing *Martinez*, Balentine attempted to vacate the district court's final judgment through a Rule 60(b) motion. *Balentine v. Thaler*, No. 12-70023, 2012 U.S. App. LEXIS 17370, at *1 (5th Cir. Aug. 17, 2012) (per curiam) (not designated for publication) (*Balentine II*). Relying on *Ibarra*, the district court denied relief. *Id.* at *8. The appellate panel affirmed, finding *Ibarra* to be controlling precedent. *Id.* at *9. When Balentine moved for rehearing en banc, four judges dissented from the order denying him relief. *Balentine v. Thaler*, No. 12–70023, 2012 U.S. App. LEXIS

17753, at *1 (5th Cir. Aug. 21, 2012) (per curiam) (not designated for publication) (*Balentine III*). The same day, Balentine filed a petition for certiorari. Brief of Petitioner–Appellant, *Balentine v. Thaler*, No. 12-5906 (Aug. 21, 2012). The following day, the Supreme Court granted Balentine's motion for a stay of execution, pending its decision on Balentine's petition.

To the extent Will relies on the dissenting opinions entered by members of the Fifth Circuit in Balentine's case to support his argument that *Ibarra* no longer controls the Court's disposition of his case, his reliance is misplaced. Dissenting opinions, even those authored by Supreme Court justices, have no precedential value. *United States v. Ameline*, 409 F.3d 1073, 1083 n.5 (9th Cir. 2005); *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1513 (11th Cir. 1996).

To the extent Will looks to the Supreme Court's order staying Balentine's execution in an attempt to undermine *Ibarra*'s precedential nature, his reliance is similarly misplaced. Initially, the Supreme Court has not granted Balentine's petition for certiorari. Indeed, if there had been sufficient votes to grant certiorari on the day of Balentine's scheduled execution, the Supreme Court would have granted the petition outright rather than solely issuing a stay. Rather, the Supreme Court has stayed Balentine's execution while it considers his petition in its next regular conference. This measure is not in itself remarkable or indicative of sufficient support among the justices for granting the petition. *See* Eugene Gressman *et al.*, *Supreme Court Practice* 911–12 (9th Ed. 2007) (discussing courtesy fifth votes for stays of execution and certain justices' preferences for

considering capital petitions during the regular order of business); *see also Dansby*, 2012 WL 3870571 at *7–8 (noting that the *Martinez* majority repeatedly emphasized the narrowness of its ruling and that the two dissenting justice would not even have created the exception at all). And even if the Supreme Court were to grant Balentine's petition, there is no guarantee that Balentine will receive the relief he seeks. *Id.*

In short, the Supreme Court's actions in Balentine's case present no reason for this Court to take the extraordinary step of rejecting *Ibarra,* 28 U.S.C. § 2244(b)(2)(A)–(B)(ii) and *Gonzalez v. Crosby*, and amending Will's judgment to await the outcome of Balentine's proceeding. *See Rodriguez*, __ F.3d at __, 2012 U.S. App. LEXIS 19372, at *30 (emphasizing the extraordinary nature of the remedy that Rule 59(e) provides). Moreover, the Fifth Circuit has clearly stated that "[a]bsent an intervening Supreme Court case overruling prior precedent, [courts of the Fifth Circuit] remain[s] bound to follow [Fifth Circuit] precedent even when the Supreme Court grants certiorari on an issue." *United States v. Lopez-Velasquez*, 526 F.3d 804, 808 n.1 (5th Cir. 2008); *see also DeMoss v. Crain*, 636 F.3d 145, 151 n.1 (5th Cir. 2011) (same); *United States v. Sanchez-Ledezma*, 630 F.3d 447, 448 n.1 (5th Cir. 2011) (same); *Selvage v. Lynaugh*, 842 F.2d 89, 94 (5th Cir. 1988) (same); *Wicker v. McCotter*, 798 F.2d 155, 158 (5th Cir. 1986) (same). Here, no intervening Supreme Court decision has overruled or otherwise called into question this Court's en banc precedent that *Martinez* does not apply to Texas criminal judgments. *Ibarra*, 686 F.3d at 222. Will's speculation thus provides no compelling reason for this Court to depart from Fifth Circuit

practice, which is to rule based on present law rather than to wait for the Supreme Court's decision. What is relevant is the current state of the law, and not what the Supreme Court may or may not do at some future date. *See Selvage*, 842 F.2d at 94–95 ("We would find it even more difficult rationally to order outcomes if we were required to guess the meaning of unexplained grants of stay or writs of certiorari. Rather, we apply the settled law of our circuit until it is changed by our court or the Supreme Court has plainly signaled a change.").

## IV. Because the Trial–Related IAC Claim is Not "Substantial," Will Cannot Show Cause to Excuse the Default.

But even were it assumed that a court found the Texas and Arizona systems so similar as to leap the previous hurdles, Will cannot leap the remaining obstacle: because his ineffective–assistance–of–trial–counsel claim is not "substantial," he can show no cause to excuse default. *See* 132 S. Ct. at 1318. The claim can be shown to be insubstantial by showing (1) that the trial-counsel effectiveness claim (a) does not have any merit or (b) is wholly without factual support, or (2) that the state habeas counsel did not perform below constitutional standards. *See id.* at 1319. If trial counsel was effective, state habeas counsel cannot be faulted for forgoing a complaint.

A petitioner raising an ineffective-assistance claim must show that trial counsel's performance was deficient and that the deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show counsel delivered deficient performance, the petitioner must show that counsel's representation fell below an objective standard of

reasonableness. *See id.* at 687–88. A reviewing court must be "highly deferential" to counsel's conduct. *See id.* at 689. A reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See id.* at 690. The petitioner must overcome the presumption that under the circumstances, the challenged action might be considered sound trial strategy. *See id.* In fact, a "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" *Lave v. Dretke*, 416 F.3d 372, 380 (5th Cir. 2005).

But a reviewing court need not consider the deficiency prong if it concludes that the petitioner has shown no prejudice. *Strickland*, 466 U.S. at 697. Moreover, the petitioner may not simply allege, but must "affirmatively prove" prejudice. *Id.* at 693. To show prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* That requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington v. Richter*, 131 S. Ct. 770, 791 (2011).

Will must do more than show that his proposed defense based on the jacket and Rosario's statements was reasonable. Will must show that such a defense was required under *Strickland*, that adding these pieces to the

existing actual-innocence defense rejected by the jury was the only reasonable option.  This he has failed to do.

### A. Will alleges that if trial counsel had investigated the green jacket and Rosario's statements, it would have proved him innocent.

This pleading will not belabor the facts of the crime, described by this Court as "strong circumstantial evidence" of guilt, except to note that trial counsel was found to be constitutionally effective after an evidentiary hearing on the issue, in part because trial counsel fully presented evidence supporting their Rosario-did-it theory, which was rejected by the jury. *Will v. Thaler*, 2010 WL 2179680 at *1–4 (S.D. Tex. 2010) (unpublished); *Will v. Thaler*, 2012 WL 135590 at *1–3, 10 (S.D. Tex. 2012) (unpublished). Will alleges that marks and blood on the green jacket, and Rosario's "inculpatory statements,"[6] should have been investigated by trial counsel. Brief at 5–6.

### B. Neither trial nor state habeas counsel performed deficiently.

#### 1. The evidence Will briefly recites was known to trial counsel and hardly proof of his innocence.

Will suggests that marks on a green jacket and statements by Rosario should have been investigated and presented by trial counsel. Brief at 5–6. All of this information was available to the defense at the time of trial and, had Will promptly made these claims at the proper time, his attorneys could have addressed these claims fairly and defended their strategic choices. For

---

[6]    Including now another new claim regarding a "hit" put out by Rosario against Will. Brief at 5. This is of course something Will could and should have presented long ago, and is unexhausted, procedurally barred, and unrelated to Will's guilt for the murder of Hill.

instance, it defies logic and reason that two highly experienced and skilled defense lawyers would have not noticed marks on their client's jacket worn during the offense or would not have examined them with the assistance of their expert. For Will to lay behind a log and present these accusations in a forum where his attorneys cannot defend themselves is unpersuasive at best. Will does not even assert that his attorneys were unaware of these issues, only that he "could further develop [his] IAC claim . . . [that] his trial attorneys provided ineffective assistance by not sufficiently proving that Rosario committed the murder." Brief at 6, citing Order, ECF No. 66, at 1. This cannot be enough to get over the hurdle of showing his claim is substantial.

### 2. As for uncalled witnesses, Will does not suggest the substance of the missing testimony.

As for the missing evidence, a petitioner who alleges that counsel was deficient for failing to investigate must allege with specificity what the investigation would have revealed and how it would have altered the trial's outcome. *Lockett v. Anderson*, 230 F.3d 695, 713 (5th Cir. 2000). Will alleges only that the jacket was "apparently [] never before investigated" and "suggests to us" a bullet from Rosario grazed the back of Will's jacket while both Will's hands were handcuffed behind his back. Brief at 5–6. Although he argues that certain statements exist in records, he fails to name witnesses that should have been called to testify, and Will does not allege the substance of the missing testimony about either the statements or the import of the marks on the jacket. A reviewing court cannot determine whether reasonable

counsel should have presented the testimony or whether the missing testimony led to prejudice. *See Strickland*, 466 U.S. at 687.

### 3. The evidence cited by Will does not show his innocence.

The evidence cited by Will does not demonstrate his innocence. The ambiguous photos of marks on fabric are not interpretable to the lay observer as either bullet grazes, blood, or anything else, and the fact that there appear to be shiny areas make it even less probable that the marks are long–dried bloodstains. Further, Will keeps pushing his theory that he was incapable of shooting Hill because his hands were cuffed behind his back. The *only evidence* that Will was ever restrained in any way is the ambiguous statement by trainee–deputy Hill that he had "one in custody." The term "custody" does not necessarily mean Will was handcuffed, much less had *both* hands in cuffs, much less both hands cuffed behind his back. It very well could have meant Will was kneeling or lying on the ground complying with verbal orders, or that Hill had one hand on Will and was preparing to cuff him. This is consistent with the physical evidence at the scene as well, which revealed fully shut, unmarked and undamaged cuffs lying on the ground and no handcuff key in sight. Hill was, after all, a new deputy still undergoing training in the field, and was unlikely to be as disciplined, about following standard protocol or using precise language on the radio, as a more seasoned officer would be in such an adrenaline-producing situation. The substantial weight of the evidence indicated that Will was the shooter, and a defense attorney's snapshots of a jacket and bald assertions do not change that fact.

Rosario's statement that he handled the gun just before the murder and that a cop was shot could have referred to any time that night and do not reveal knowledge only the killer would possess. *If* Rosario "put out a hit" on Will, it could very well have been because Will was trying to pass the blame for the murder to Rosario. And to claim that Rosario was "part" of the reason for Hill's murder is far from confessing to committing it or from exonerating Will. Again, it defies reason to think that a potential cop-killer would have been given a free pass by interrogating officers, or his statements not introduced without good reason by aggressive and capable defense counsel like Cunningham and Osso who were already trying to blame Rosario for the murder.

The evidence, taken at face value, does not suggest that a reasonable counsel would have been required to introduce the evidence. *See Strickland*, 466 U.S. at 687–88. Nor does the evidence suggest that had counsel presented the evidence, the result of the proceeding would have been different. *See id.* at 694. Hence, the ineffective–assistance claim targeting trial counsel has no merit and therefore is not substantial. *See Martinez*, 132 S. Ct. at 1319. Despite the presentation of reams of exhibits and affidavits purporting to show that counsels' performance was lacking, Will merely succeeds in demonstrating how he, in hindsight, would have conducted the investigation and presentation of witnesses in a completely different manner than counsel. But such backward-looking hyperbole does little to establish that counsels' thorough investigation and subsequent strategy was anything but sound, and flies in the face of *Strickland*'s mandate that counsels'

performance must not be judged through the distorting lens of hindsight. 466 U.S. at 689. Will's allegations do not show flagrant omissions by the players involved in his trial; rather, they merely demonstrate the exercise of strategy and typify the maxim that the Constitution entitles a criminal defendant to a fair trial, not a perfect one. Consequently, even with the benefit of *Martinez* on his side, Will could not overcome the procedural default because his claims are entirely without merit.

State habeas counsel was reasonable to forgo these claims in collateral proceedings. *See Martinez*, 132 S. Ct. at 1319. And because the actions of state habeas counsel did not fall below the standard set out in *Strickland*, even if Texas did fall into the exception carved out by *Martinez*—and the Director argues that it does not—Will fails to show "cause" sufficient to avoid default. *See* 132 S. Ct. at 1319. And because Will cannot show "cause," he does not avoid default.  This Court need not review his trial-related ineffective-assistance claim on the merits. *See id.*

## V.    The Rule Will Proposes Would Enshrine a Third Trial.

Federal habeas corpus jurisprudence views the state criminal trial as the main event. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977). The AEDPA modified the federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas "retrials." *Bell v. Cone*, 535 U.S. 685, 693 (2002). When an individual has been accused of a crime, the state trial is the time and the place set for the defendant to be tried by jurors and found either guilty or not. *Sykes*, 433 U.S. at 90.

> To the greatest extent possible all issues which bear on this charge should be determined in this proceeding: [T]he accused is in the court-room, the jury is in the box, the judge is on the bench, and the witnesses, having been subpoenaed and duly sworn, await their turn to testify. Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens.

*Id.*

The trial should not be a "'tryout on the road' for what will later be the determinative federal habeas hearing." *Id.* Already, petitioners can view the federal habeas proceedings as a second trial after the first trial turned out not to their liking. The rule Will proposes, a determination of whether ineffective-assistance claims could have been developed in new-trial or appellate proceedings, envisions a third trial, a trial to determine whether the State will be allowed to assert a default defense. Such a third trial would ill-fit the congressional intent of AEDPA, which was to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases. *Woodford*, 538 U.S. at 206 (citing *Williams*, 529 U.S. at 386).

## VI.   Will's New IAC–At–Appeal Claim is Barred as Successive, Among Other Reasons.

Will asks to add yet another new claim, this time an allegation of ineffective assistance of appellate counsel. Brief at 65. This likewise would be new, unexhausted, procedurally barred, successive, and meritless.  28 U.S.C. § 2244(b)(1), (b)(2)(A)-(B)(ii); 28 U.S.C. § 2254 (d)(1)-(2), (e)(2); *Richter*, 131 S. Ct. at 785; *Williams*, 529 U.S. at 412; *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398–99 (2011). *Martinez* only carves out a narrow exception for defaulted

IAC–at–*trial* claims, and says nothing about defaulted appellate IAC claims. 132 S.Ct. at 1315.

## CONCLUSION

This Court has no jurisdiction to address the new, unexhausted, procedurally barred and meritless IAC claims presented in Will's Rule 60(b) motion, as they are properly considered as a successive habeas petition filed without authorization. Will has neither shown that *Martinez* applies to Texas nor that *Ibarra* is not binding on this Court, and he has not shown that *Martinez* is an extraordinary circumstance justifying Rule 60(b) relief. As such, this Court is likewise without jurisdiction to order discovery, hearings, or make findings regarding Will's case or Texas's laws.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL HODGE
First Assistant Attorney General

DON CLEMMER
Deputy Attorney General for Criminal Justice

EDWARD MARSHALL
Chief, Postconviction Litigation Division

 /s/ Georgette P. Oden
GEORGETTE P. ODEN
Assistant Attorney General
Texas Bar No. 24029752
P. O. Box 12548, Capitol Station
Austin, Texas  78711

(512) 936-1400
Fax No. (512) 320-8132

ATTORNEYS FOR RESPONDENT

**CERTIFICATE OF SERVICE**

I, Georgette P. Oden, Assistant Attorney General of Texas, do hereby certify that a copy of this brief was electronically mailed to counsel for petitioner at <u>samy@gergerclarke.com</u> today, November 30, 2012.


 /s/ Georgette P. Oden
GEORGETTE P. ODEN
Postconviction Litigation Division