## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| ROBERT GENE WILL, II, | § § § | |
| Petitioner, | § § | |
| v. | § § | H-07-CV-1000 |
| WILLIAM STEPHENS, Director, | § § | (Death Penalty Case) |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions Division, | § § | |
| Respondent. | § § | |

## PETITIONER ROBERT GENE WILL, II's EXPEDITED MOTION TO STAY AND HOLD PROCEEDINGS IN ABEYANCE

Petitioner Robert Gene Will, II respectfully asks this Court to stay the proceedings in this case and hold them in abeyance so that he may pursue newly discovered, unexhausted claims in state court. Documents belatedly produced by the Harris County District Attorney's Office have led to the discovery of new testimony further implicating alternative suspect Michael Alan Rosario. Despite having these documents with information crucial to Mr. Will's defense, the State of Texas failed to turn them over before trial as required by *Brady v. Maryland*, 373 U.S. 83 (1963). Petitioner intends to file a habeas petition in Texas state court to pursue his newly discovered *Brady* and actual innocence claims before September 1, 2013 and is required by Texas law to secure a stay in this Court before he may do so.

### I.    BACKGROUND

Since his arrest on December 4, 2000, Mr. Will has steadfastly maintained that he is innocent of the crime for which he was convicted. Mr. Will has consistently asserted that

Michael Rosario killed Deputy Barrett Hill.  In past orders, this Court has lamented the "strict limitations" placed upon it by federal law and urged the State of Texas to "exercise restraint" in the execution of Mr. Will's sentence in light of the "grave" errors at his trial and the "considerable evidence supporting Will's innocence."  Dkt. 88, at 19-20.  Since this Court expressed such doubts about Mr. Will's guilt, counsel has discovered additional new exculpatory evidence never before disclosed to Mr. Will's prior attorneys.  *See* Exs. 5, 9, 10 (affidavits of trial and state habeas counsel).

In September 2012, federal habeas counsel Samy Khalil was provided a document by the District Attorney which states that Michael Rosario was placed into administrative separation in the Harris County Jail after Deputy Hill's murder because Rosario solicited inmate David Cruz and the Texas Syndicate prison gang to "make [a] hit on co-def. Robt. Will."  *See* Ex. 1.  The State never disclosed this document to Mr. Will's trial attorneys.  *See* Exs. 9, 10 (affidavits of trial counsel Anthony Osso and David Cunningham).  The discovery of this document led to the recent, sworn affidavit of David Cruz, which confirms that Rosario asked Cruz to "get the Texas Syndicate to do a 'hit' on Will."  *See* Ex. 2.  In the affidavit, Cruz further explains that Rosario confessed to the murder and told Cruz he planned to "blame Will."  *See id*.

The State's suppression of this evidence, precluding Mr. Will's counsel from presenting it to the jury, violates Mr. Will's federal constitutional rights.  Under federal law, Mr. Will must exhaust any new claims in Texas state court prior to raising them in federal court, 28 U.S.C. § 2254(b)(1), and must do so before the 1-year statute of limitations has run. 28 U.S.C. § 2244(d)(1).  Under Texas law, Mr. Will is unable to exhaust his new claims unless and until this Court issues a stay.  *See Ex parte Soffar*, 143 S.W. 3d 804, 807 (Tex. Crim. App. 2004).  Accordingly, Mr. Will asks this Court to stay and hold in abeyance the federal proceedings

herein to permit him to file a subsequent application for Writ of Habeas Corpus in the Texas Court of Criminal Appeals and raise these claims before the federal statute of limitations expires.

## II.      This Newly Discovered Evidence Shows that Mr. Will is Entitled to a New Trial

The State withheld favorable, material evidence from the defense before trial in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  Among documents never produced was Michael Rosario's prison "Administrative Separation Review Sheet" dated December 5, 2000 (the day after the shooting) which states that Rosario "made contact w/ [prison officials in the  Disruptive Group Unit] to visit w/ David Cruz [Texas Syndicate affiliate] soliciting [the Texas Syndicate] to make hit on co-def. Robt. Will."  *See* Ex. 1.  Another document not disclosed to defense counsel reveals that only days after Deputy Hill's murder, Rosario admitted to Harris County Sheriff's Deputy Patricia Schifani that he was "part of the reason" Deputy Hill was murdered.  *See* Ex. 3 ("Schifani Report").  These documents were produced by the District Attorney to federal habeas counsel, Samy Khalil, in early September 2012.

Discovery of these documents has led to the new testimony of Mr. Rosario's would-be hitman, David Cruz.  Mr. Cruz has provided a sworn affidavit stating that Rosario not only solicited Mr. Will's murder from the Texas Syndicate, but also confessed to shooting Deputy Hill during a trip back from court with Rosario.  *See* Ex. 2.  The prison records of Michael Rosario and David Cruz confirm that the two inmates were housed in the same jail on December 5, 2000 and attended several court proceedings together in the Spring of 2001.  All of this previously undisclosed evidence adds to mounting evidence that Michael Rosario, not Robert Will, committed the murder for which Mr. Will was condemned to death.  Mr. Will now seeks to bring claims of actual innocence and violation of due process under *Brady* based on this newly discovered evidence.

3

**III.    This Court Should Issue a Stay to Allow for State Review of Mr. Will's Claims**

    **A.    A Stay and Abeyance Is Necessary in this Case**

Although Texas law permits a petitioner to file a successive state habeas petition, *see* Tex. Code Crim. Proc. Art. 11.071, § 5(a)(2), it also requires that this Court issue a stay before a Texas court will review Mr. Will's claims. State law prohibits Texas courts from considering a prisoner's habeas application if the prisoner has a habeas petition pending in federal court related to the same conviction. *Soffar*, 143 S.W. 3d at 805. In *Soffar*, the Texas Court of Criminal Appeals (T.C.C.A.) dismissed a subsequent state habeas application "because no federal court ha[d] entered an order staying all proceedings in applicant's pending parallel federal writ." *Id.* at 807. A "parallel writ" is one "that relates to the same conviction or same matter." *See id.* at 805 (citing *Ex parte Powers*, 487 S.W.2d 101 (Tex. Crim. App. 1972)) (internal quotation marks omitted). Thus, under Texas law any subsequent state habeas application Mr. Will submits would be subject to dismissal unless this Court issues a stay and abeyance. *See id*. at 807 (The T.C.C.A. will "permit consideration of the merits of a subsequent writ . . . if the federal court having jurisdiction over a parallel writ enters an order staying all of its proceedings for the applicant to return to the appropriate Texas court to exhaust his state remedies."); *see, e.g.*, *Ex parte Murphy*, No. WR-70,832-02, 2010 WL 3905152, at *1 (Tex. Crim. App. Oct. 6, 2010) ("The record reflects that Applicant is currently challenging his conviction . . . in the United States District Court . . . [and] that the federal district court has entered an order staying its proceedings for Applicant to return to state court to consider his current unexhausted claims. Therefore, this Court may exercise jurisdiction to consider this subsequent state application.").

While state law prohibits Texas courts from reviewing Mr. Will's new claims without a stay from this Court, federal law prohibits this Court from granting Mr. Will federal habeas relief

unless and until his claims have been exhausted in state court.  28 U.S.C. § 2254(b); *see* Ex. 4, *Trevino v. Quarterman*, No. 5:01-cv-00306-XR (W.D. TX filed Aug. 2, 2006) (order granting motion to hold habeas petition in abeyance so petitioner could to return to state court and exhaust *Brady* claim).  Accordingly, no court currently may grant Mr. Will habeas relief pursuant to his newly discovered constitutional claims until a stay is issued by this Court.

### B.     A Stay and Abeyance Is Appropriate in this Case

District courts have discretion to stay federal habeas proceedings and hold them in abeyance while a petitioner returns to state court to exhaust his state remedies.  *Rhines v. Weber*, 544 U.S. 269, 277 (2005).  A stay and abeyance is appropriate where: "(1) the petitioner has good cause for failure to exhaust his claim, (2) the claim is not plainly meritless, and (3) the petitioner has not engaged in intentional delay."  *Schillereff v. Quarterman*, 304 F. App'x 310, 314 (5th Cir. 2008) (citing *Rhines*, 544 U.S. at 277-78).

A stay and abeyance is appropriate in this case.  *First*, the factual basis for Mr. Will's new claims could not have been presented to the state courts in a prior state habeas application because the State had never produced the evidence underlying those claims to any of Mr. Will's prior attorneys.  *See* Exs. 5, 9, 10.  Before Mr. Will's trial, defense counsel made several *Brady* requests that should have turned up state records related to Rosario's attempted "hit" on Mr. Will as well as the Schifani report.  *See id.*  In addition to the *Brady* requests, counsel also issued two subpoenas to the Harris County Sheriff's Disruptive Group Unit (DGU).  *See* Exs. 6, 7.  The subpoenas specifically requested:

> [A] complete copy of any and all records relating to any interviews regarding inmates Robert Gene Will II, Alan Michael Rosario or any other inmates concerning the death of Deputy Barrett Hill.  These records shall include any and all information obtained from any source which directly or indirectly suggests that an individual other than defendant Robert Gene Will II shot Deputy Barrett Hill.

*Id.*

In an effort seek compliance with the subpoena, Mr. Will's trial counsel called Harris County Jail Deputy Bobby Strickland to testify in a pre-trial hearing about the Sheriff's lack of any response to the subpoenas.  Ex. 11, Trial Tr. Vol. 3, at 6-7; *see* Exs 9, 10.  In answering defense counsel's questions, Deputy Strickland testified that "I have nothing pertaining to his [Rob Will's] case."  Ex. 11, at 10.  Strickland, whose job it was to stay apprised of gang-related activity and impose administrative separation of inmates to maintain security, refused to produce jail records that could contain information that he considered "confidential."  *See id*. at 14-15.  Strickland explained that any informants he spoke to were speaking "on a confidential record."  *See id*.  The Harris County Jail Administrative Review Sheet containing evidence of the "hit" was never produced to trial counsel in response to these subpoenas or at any other time.  *See* Exs. 9, 10 (affidavits of trial counsel Anthony Osso and David Cunningham).

The suppressed records were also not available to Mr. Will's state habeas counsel Leslie Ribnik.  Mr. Ribnik's sworn affidavit states that he had never seen either of the two documents at issue until recently despite extensive review of the District Attorney's files.  *See* Ex. 5.

Nor were the records available to previous federal habeas counsel.  The State failed to produce either document despite a subpoena issued by former federal habeas counsel under the authority of this Court in March 2009 to the Harris County Sheriff's Department for all of Michael Rosario's inmate records.  *See* Ex. 8.

*Second*, Mr. Will's constitutional claims are not "plainly meritless."   In *Brady v. Maryland*, the Supreme Court held that suppression of material exculpatory evidence by the prosecution, whether deliberate or inadvertent, violates due process.   373 U.S. at 86-87. Evidence is material for purposes of a *Brady* claim when there is a "reasonable probability" that the result at trial would have been different had the evidence been disclosed.   *Banks v. Dretke*, 540 U.S. 668, 698-99 (2004).   The new evidence suppressed by the State shows that Michael Rosario attempted to kill his childhood friend Rob Will because he feared Will would expose him as the shooter in Deputy Hill's murder.   *See* Exs. 1, 2.   The suppressed evidence also indicates that Rosario confessed to being the shooter, boasting to both David Cruz and Deputy Schifani that he believed he was untouchable because his father was a police officer.   *See* Exs. 2, 3.

Because the State withheld this evidence, its case was much stronger and the defense case was much weaker than the full facts would have suggested.   *See* Exs. 9, 10.   The State's suppression of this exculpatory evidence allowed its prosecutors to close their case by posing the following questions to the jury:   "[Are Rosario's actions] the actions of somebody who has just executed one of the finest people in this world? . . . [A]re those the actions of somebody who's just killed a police officer . . . ?"   Ex. 12, Trial Tr. Vol. 26, at 151-52.   The State could make this argument only because it had suppressed all incriminating evidence of what Rosario actually did after Deputy Hill's murder -- attempt to kill the only other eyewitness to the shooting, Rob Will. With this new evidence in hand, the defense would have had questions of its own for the jury:   If Rosario was innocent, why did Rosario try to kill Rob Will?   If Rosario had nothing to do with Deputy Hill's murder and was hiding in the brush when it happened, as the State contended, why did he feel the need to have his childhood friend murdered?   Had the defense been able to present

7

Mr. Cruz's new testimony about Rosario's attempted "hit" and the confirmatory prison report, there is a reasonable probability that such evidence would have turned the tide in an already close and contentious trial.   *See* Exs. 9, 10; Dkt. 88, at 19 ("only circumstantial evidence support[s] Will's conviction and death sentence"); *c.f. Wolfe v. Clarke*, 819 F. Supp. 2d 538, 551-52 (E.D. Va. 2011) (finding *Brady* violation where police suppressed information of a "hit").

*Third*, a stay in this matter is not being sought for purposes of delay, nor is it a matter of convenience for Mr. Will or his counsel.  Rather, Texas law requires it.  Further, this motion was filed only days after petitioner's counsel was able to obtain Mr. Cruz's sworn affidavit and the affidavits of his trial and state habeas counsel.  *See* Exs. 2, 5, 9, 10.  Lastly, undersigned counsel represent that we will file a state habeas petition without delay by September 1, 2013.

In sum, Mr. Will asks this Court to stay the proceedings in his case and hold them in abeyance so that he may exhaust state court remedies.

Respectfully submitted,

/s/ Jason C. Ewart
Jason C. Ewart
(Attorney-in-Charge; Admitted Pro Hac Vice)
District of Columbia Bar No. 484126
jason.ewart@aporter.com
Danielle M. Garten (Admitted Pro Hac Vice)
District of Columbia Bar No.  976591
danielle.garten@aporter.com
ARNOLD & PORTER LLP
555 12th St. NW
Washington, DC 20004
Phone: 202-942-5000
Fax: 202-942-5999

/s/ Samy Khalil

Samy Khalil
Texas Bar No. 24038997
samy@gergerclarke.com
GERGER & CLARKE
1001 Fannin, Suite 1950
Houston, Texas 77002
Phone: 713-224-4400
Fax: 713-224-5153

**ATTORNEYS FOR ROBERT WILL**

**CERTIFICATE OF FILING AND SERVICE**

I herby certify that on August 7, 2013 I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing.  Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to all registered counsel of record.

/s/ Jason C. Ewart
Jason C. Ewart

**CERTIFICATE OF CONFERENCE**

I hereby certify that on August 7, 2013 I conferred with Assistant State Attorney General Georgette Oden by telephone and the parties could not agree about the disposition of the motion.

/s/ Samy Khalil
Samy Khalil

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ROBERT GENE WILL, II, | § | |
| | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | H-07-CV-1000 |
| WILLIAM STEPHENS, Director, | § | (Death Penalty Case) |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |
| | § | |

**[PROPOSED] ORDER**

Petitioner Robert Gene Will, II, a Texas inmate incarcerated under a capital conviction

and death sentence, has moved for a stay and abeyance of federal habeas corpus proceedings

currently pending before this Court while he exhausts state court remedies.  It is hereby

**ORDERED** that Petitioner's Motion to Stay and Hold Proceedings in Abeyance is **GRANTED**.

The Court **STAYS** all proceedings in this case and holds them in **ABEYANCE** to permit state

court review.  The Court directs the Clerk to **ADMINISTRATIVELY CLOSE** this case.

Petitioner is hereby **ORDERED** to file an application for habeas corpus in state court within

thirty (30) days, and to notify this Court within thirty (30) days of a final decision by the Texas

Court of Criminal Appeals.

**IT IS SO ORDERED.**

SIGNED at Houston, Texas, on this ____ day of _____ 2013.


_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

# EXHIBIT 1

# HARRIS COUNTY SHERIFF'S DEPARTMENT
## CLASSIFICATION DIVISION
### ADMINISTRATIVE SEPARATION REVIEW SHEET

TDC TIME:

DATE:

N A M E  _Rosario, Michael_  SPN # _149258 2_  CELLBLOCK LOCATION _10 B4-05A_

A L I A S _____

DATE HOUSED _12-05-00_  CLASSIFICATION _R2-L2_  POS. "6" CODE _13_

HOUSED BY _J. Richards_  TIME RECEIVED _1100_  COURT DATE _12-06-00_  ON APPEAL Y / Ⓝ

**ARMBAND INFORMATION :**

DOB: _08-04-78_  AGE: _22_  RACE: _W_  SEX: _M_  LOCKER # _____  COURT: _185_

DATE RELEASED FROM SEPARATION: _____  RELEASED TO: _____

REASON FOR SEPARATION :

_Co-Def in Capital Murder p/c case_

_Charged with theft_  _★ See LP13 ★_

_Made contact w/ DGU to visit w/ David Cruz ★_
_5B5-08_
_Soliciting $ to make hit on Co-Def Robt. Will (Gene)_

RECOMMEND RESTRAINTS: ☐YES ☐NO  REASON : _Floor Policy_

RECOMMENDING DEPUTY: _____

## TRANSFER RECORD

| DATE HOUSED | CURRENT CELL | TRANSFER TO CELL | AUTHORIZATION |
|---|---|---|---|
|  | 1UB4-05A | 6B1-01H |  |
| 08/6 01 | 6B1 | 7E2-01F | Squyres |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

AOSEPRS1

NAME Rosario, Michael       SPN# 1492582       CELLBLOCK LOCATION 10B4-05A

ALIAS _____

CHARGES Theft $1500-20K                    SEPERATION CODE: #503
                                                    *SEE BOTTOM OF PAGE)

DATE HOUSED IN SEPERATION: 12-05-00   CAUTION See LP 13

| | DATE | REVIEWING DEPUTY | COMMENTS AND OBSERVATIONS | |
|---|---|---|---|---|
| 1. | DEC 2 1 2000 | BMD | NXT ST: 1-10-01 | BM |
| 2. | 010201 | MS | N/C | BM |
| 3. | 011801 | BMD | NXT ST: 1-19-01 | M |
| 4. | 020101 | MS | NXT St 020601 | BM |
| 5. | FEB 1 6 2001 | BMD | NXT ST: 3-9-01 | BM |
| 6. | 030501 | MS | NXt St 030801 | |
| 7. | MAR 1 5 2001 | BMD | NXT ST: 3-26-01 | BM |
| 8. | APR 0 2 2001 | MS | NXt St 041201 | BM |
| 9. | 041101 | MS | N/C | |
| 10. | 050201 | MS | NXt St 071701 | BM |
| 11. | MAY 1 7 2001 | BMD | N/C | BM |
| 12. | JUN 0 5 2001 | BMD | N/C | BM |
| 13. | 061501 | MS | N/C | BM |
| 14. | 7-3-01 | BMD | NXT ST: 8-2-01 | BM |
| 15. | 071701 | MS | N/C | BM |
| 16. | 7-27-01 | BMD | N. | BM |
| 17. | 080601 | MS | NXt St 080901 | BM |
| 18. | 082201 | MS | NXt St 100801 | BM |
| 19. | | | | |
| 20. | | | | |
| 21. | | | | |
| 22. | | | | |
| 23. | | | | |
| 24. | | | | |
| 25. | | | | |
| 26. | | | | |
| 27. | | | | |
| 28. | | | | |
| 29. | | | | |
| 30. | | | | |

ADSEPRSZ

## SEPERATION CODES

500 - PENDING GANG LIAISON UNIT REVIEW
501 - POSSIBLE GANG TARGET OR HIT
502 - PENDING DISCIPLINARY COMMITTEE ACTION
503 - PROTECTION FROM OTHER INMATES
504 - REQUESTED BY FEDERAL AUTHORITY
505 - REQUESTED BY COMMAND STAFF

506 - RECEIVED DEATH PENALTY FROM COURT
507 - ESCAPE RISK
508 - REQUESTED BY COURT
509 - VIOLENT / AGGRESSIVE TO DEPUTYS OR STAFF
510 - I.A.D. INVESTIGATION
511 - UNABLE TO ADJUST TO GENERAL POPULATION

EXHIBIT 2

STATE OF TEXAS

COUNTY OF CHEROKEE


AFFIDAVIT OF DAVID DANIEL CRUZ


DAVID DANIEL CRUZ, being first duly sworn, appeared before the undersigned authority duly designated to administer oaths and states as follows:

1.     My name is David Daniel Cruz. I am over 18 years of age and am otherwise competent to give this affidavit. No promises or agreements have been made to me in exchange for this statement, and I do not expect any in the future. This affidavit is based on my personal knowledge.

2.     I met Michael Rosario before the shooting death of a Harris County Sheriff's Deputy that occurred around the first week of December 2000. Michael Rosario also goes by the nickname "Rocky."

3.     Rocky used to brag that his father was a Houston police officer and that he could get away with anything. My sister Cynthia Cruz also knew Rocky. She used to work at a nearby beauty salon and used to cut Rocky's hair and she also cut Rocky's father's hair. I met Robert Will through Rocky. Rocky told me that he and Will attended school together. The three of us soon began to hang out together. Rocky and Will used to refer to each other as "primos" (cousins) but they were not related. Both have been to my home on several occasions.

4.     In 2000 and 2001, I was locked up at the Harris County Jail in Houston. While at the jail, Rocky asked me if I could get the Texas Syndicate to do a "hit" on Will. I took Rocky's comments to mean that he wanted Robert Will dead. I told Rocky that I was no longer associated with the Texas Syndicate, and I did not involve myself in Rocky's plans. I had no more conversations with Rocky about this subject.

5.     Approximately two months after the death of the Harris County Sheriff's Deputy, I was arrested on another charge and held again in the Harris County Jail. During a trip back from court I spoke with Rocky about the shooting death of the Harris County Sheriff's Deputy. Rocky told me that he and Will were caught stealing and that the police officers chased them. Rocky also told me that he was the one who shot the police officer but that he was going to blame Will.

6.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and abilities.


_____
Signature

DAVID D. CRUZ
_____
Printed Name

COUNTY OF CHEROKEE, STATE OF TEXAS

SUBSCRIBED and SWORN before me in the jurisdiction aforesaid, this 25TH day of July 2013.



Notary Public's Signature

My commission expires: 08/22/2014

RICHARD REYNA
MY COMMISSION EXPIRES
August 22, 2014

# EXHIBIT 3

DECEMBER 9, 2000

TO:        SGT. V. RUSSELL
FROM:      DEPUTY PATRICIA SCHIFANI, BADGE #3440
RE:        CONVERSATION WITH **INMATE ROSARIO, MICHAEL ALAN, SPN 01492582**

I, DEPUTY PATRICIA SCHIFANI, BADGE #3440, WHILE WORKING MY REGULARLY
SCHEDULED ASSIGNMENT OF PROBABLE CAUSE COURT ON DECEMBER 7, 2000, DID COME
IN CONTACT WITH INMATE ROSARIO, MICHAEL ALAN, SPN 01492582. INMATE ROSARIO
WAS SCHEDULED TO APPEAR IN JUSTICE OF THE PEACE COURT FOR CLASS C DOCKET.
BECAUSE INMATE ROSARIO WAS ALREADY HOUSED IN 1301 FACILITY, CELL 10B4, NO
BOOKING SCREEN CHECK WAS MADE TO DETERMINE WHETHER HE WAS HOUSED OR
STILL IN PROCESSING.   AT APPROXIMATELY 2045-2100 HOURS I RETURNED INMATES
FROM THE 2000 HOURS DOCKET TO THE FLOORS AT THE 1301 JAIL.  WHILE AT 1301, I ALSO
PICKED UP INMATES FOR THE  2215 HOURS DOCKET. LISTED ON THE 2215 HOURS COURT
DOCKET, (THE LISTING OF INMATES SCHEDULED TO BE BROUGHT BEFORE A JUDGE), WAS
INMATE ROSARIO, MICHAEL (SPN 01492582), ALONG WITH 11 OTHER INMATES. IT IS MY
CUSTOMARY PRACTICE TO ASK EACH INMATE, AS THEY ENTER THE ELEVATOR, WHAT
THEIR NAME AND SPN NUMBER IS, WHICH I DID THIS NIGHT. INMATE ROSARIO
ANSWERED THE QUESTION AS HE ENTERED THE ELEVATOR AND STOOD IN THE BACK
WITH THE OTHER INMATES.

UPON RETURNING WITH THE INMATES TO PROBABLE CAUSE COURT, I WAS ABOUT TO
CLOSE THE DOOR TO THE COURT HOLDOVER CELLS, WHEN INMATE ROSARIO
APPROACHED ME AT THE DOOR AND SAID, IN THE PRESENCE OF ALL THE OTHER
INMATES, "HEY! I AM NOT SUPPOSE TO BE IN HERE". HE THEN LOOKED DIRECTLY AT THE
MOURNING BADGE COVER I WAS WEARING OVER MY BADGE (IN HONOR OF SLAIN
DEPUTY BARRY HILL).  HE POINTED AT MY BADGE COVER AND SARCASTICALLY ASKED
ME, "DO YOU KNOW WHY YOU ARE WEARING THAT?" I REPLIED TO HIM, "YES, I KNOW
WHY I AM WEARING IT". HE THEN PROCLAIMED, "WELL, I AM PART OF THE REASON YOU
ARE WEARING IT, DO YOU KNOW WHO I AM?" I TOLD HIM, "YES, I KNOW WHO YOU ARE".
HE THEN STUCK HIS ARM TOWARD ME AND SAID, "LOOK AT WHAT MY ARMBAND SAYS!"
HE THEN POINTED AT HIS ARMBAND CAUTION TEXT WHICH INDICATED "*PROTECTION*".
IT WAS AT THIS TIME THAT HE DECLARED, "I'M NOT IN HERE FOR MURDER.  I'M JUST
HERE FOR AUTO THEFT."  I THEN ASKED ROSARIO IF HE WAS IN A SEGREGATED CELL ON
THE 10TH FLOOR (WHERE HE WAS HOUSED IN 10B4) AND HE REPLIED, "YES". I THEN TOLD
HIM TO STEP OUT OF THE DOOR AND COME WITH ME. AS HE WAS WALKING THROUGH
THE DOOR, HE SWAGGERED OUT IN A COCKY MANNER, WITH A BOUNCE AND WITH A
SLIGHT DRAG OF HIS FOOT BEHIND HIM. HE THEN STATED AS HE EXITED THE DOORWAY,
"I'M HIGH-PROFILE!  DO YOU KNOW WHO MY FATHER IS?" I REPLIED TO HIM, "YES, I
KNOW YOUR FATHER WORKS FOR HPD." HIS DEMEANOR WAS ARROGANT AT THIS POINT
AND APPEARED TO TAKE PLEASURE IN HIS NOTORIETY.  HE ALSO DISPLAYED SOME
GANGLIKE HAND SIGNS DURING THIS PORTION OF HIS CONVERSATION WITH ME. I THEN
ESCORTED HIM TO SEPARATION CELL #111 IN THE INMATE PROCESSING CENTER
BOOKING SECTION WHERE HE REMAINED UNTIL HIS APPEARANCE BEFORE PROBABLE
CAUSE COURT JUDGE B. VILLAGOMEZ.  I INFORMED SGT. RUSSELL OF WHAT HAD JUST
TRANSPIRED AND THAT INMATE ROSARIO HAD BEEN PLACED IN SEPARATION CELL #111
FOR HIS PROTECTION AT APPROXIMATELY 2110-2115 HOURS.  AT NO TIME WAS INMATE
ROSARIO HANDCUFFED, SHACKLED, OR RESTAINED DURING THIS INCIDENT.  NO OTHER
DEPUTIES WERE INVOLVED.

# EXHIBIT 4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**FILED**

AUG - 2 2006

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

CARLOS TREVINO,                      §
TDCJ No. 999235,                     §
                                     §
          Petitioner,                §
                                     §
v.                                   §      CIVIL NO. SA-01-CA-306-FB
                                     §
NATHANIEL QUARTERMAN, Director,      §
Texas Department of Criminal         §
Justice, Criminal Institutions       §
Division,                            §
                                     §
          Respondent.                §

## ORDER GRANTING MOTION TO HOLD CASE IN ABEYANCE

The matter before the Court is petitioner's motion to
stay proceedings and hold case in abeyance, filed March 28,
2006, docket entry no. 49. Petitioner has presented this Court
with a sworn statement given to law enforcement officers by one of
petitioner's co-defendants, Seanido Rey, which identifies a person
other than petitioner as the individual who fatally stabbed Linda
Salinas. Petitioner alleges law enforcement officers had
possession of Rey's statement yet failed to make same available for
inspection by petitioner's defense counsel prior to petitioner's
capital murder trial. In support of this assertion, petitioner has
furnished an affidavit from petitioner's lead trial counsel in
which said counsel states he did not see Rey's statement prior to
petitioner's trial. Petitioner requests that this Court stay all
proceedings in this cause and hold this case in abeyance so as to
permit petitioner to return to state court and exhaust available

state habeas corpus remedies on what appears on the surface to be a rather compelling *Brady* claim.

Respondent opposes petitioner's motion, arguing (1) petitioner has failed to explain the circumstances surrounding petitioner's discovery of Rey's statement and, therefore, has failed to show good cause for petitioner's failure to present this claim earlier and (2) petitioner's *Brady* claim is without merit because prosecutors and law enforcement officers made Rey's statement available for inspection by petitioner's trial counsel prior to petitioner's trial.

The problems with respondent's arguments in opposition to petitioner's motion for stay are (1) under the AEDPA, it is not within the province of this Court to make initial factual determinations on disputed evidentiary matters (*see Hernandez v. Johnson*, 108 F.3d 554, 558 & n.4 (5th Cir. 1997)(holding, under the AEDPA, the proper forum for the making of all factual determinations in habeas cases will shift to the state courts "where it belongs" and recognizing that the AEDPA clearly places the burden on the federal habeas petitioner "to raise and litigate as fully as possible his potential federal claims in state court"), *cert. denied*, 522 U.S. 984 (1997); and 28 U.S.C. § 2254(e)(1)) and (2) if respondent is correct and Rey's statement was made available to petitioner's trial counsel prior to petitioner's trial, then a *second* currently unexhausted claim for federal habeas relief

potentially exists, to wit, ineffective assistance by petitioner's trial counsel in failing to call Rey to testify at petitioner's trial or otherwise seek to employ Rey's statement to impeach the prosecution witness who identified petitioner as the individual who fatally stabbed Linda Salinas.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[1] radically altered the standard of review by this Court in federal habeas corpus proceedings filed by state prisoners pursuant to Title 28 U.S.C. Section 2254. Under the AEDPA, this Court is statutorily prohibited from granting federal habeas relief on an unexhausted claim unless the respondent expressly waives the exhaustion requirement. 28 U.S.C. §2254(b). The Supreme Court has expressly authorized federal District Courts to stay and hold federal habeas corpus actions in abeyance pending a petitioner's return to state court to exhaust available state remedies on otherwise unexhausted claims for relief. *See Rhines v. Weber* 544 U.S. 269, 276-77, 125 S.Ct. 1528, 1534-35, 161 L.Ed.2d 440 (2005)(holding district courts have the authority to issue stays in federal habeas corpus proceedings to permit petitioners to return to state courts to exhaust state remedies when (1) there is good cause for the petitioner's failure to exhaust state remedies and (2) the unexhausted claims are not plainly meritless). For the reasons set forth in this Court's Order issued April 3, 2006,

---

[1] Pub.L. No. 104-132, 110 Stat. 1214 (1996).

docket entry no. 50, this Court finds petitioner's *Brady* claim is plainly not meritless. Moreover, if, as respondent now asserts, petitioner's trial counsel was aware of Rey's statement yet made no effort to utilize same during petitioner's trial, petitioner also possesses a potentially meritorious ineffective assistance claim.

As explained above, the materials currently pending before this Court reveal genuine issues of material fact exist with regard to whether there is good cause for petitioner's failure to previously present his currently unexhausted *Brady* and ineffective assistance claims to the state courts. There is, however, no suggestion before this court, much less any evidence establishing that petitioner or his previous state habeas counsel were aware at the time of petitioner's previous state habeas corpus proceedings of the existence of Rey's statement or of the apparent failure of petitioner's trial counsel to make use of Rey's statement during petitioner's trial. Under such circumstances, it is incumbent upon the state courts to make the initial factual determination regarding when, and the precise circumstances under which, petitioner first discovered the existence of Rey's statement.

Under such circumstances, this Court believes this cause should be stayed and held in abeyance so as to permit petitioner to make an expeditious return to state court to exhaust available state remedies on his currently unexhausted *Brady* and ineffective assistance claims.

Accordingly, it is hereby **ORDERED** that:

1.    Petitioner's motion to stay proceedings and hold case in abeyance, filed March 28, 2006, docket entry no. 49, is **GRANTED** as set forth hereinafter.

2.    On or before thirty days from the date of this Order, petitioner shall file his successive state habeas corpus application, motion for appointment of counsel, and any other pleadings or motions necessary to initiate his efforts to seek state habeas review of petitioner's currently unexhausted *Brady* and ineffective assistance claims.  Petitioner shall present the state habeas court with all the factual allegations, evidentiary support therefor, and legal arguments supporting his *Brady* and ineffective assistance claims that petitioner wishes to present to this Court upon petitioner's return to this Court.

3.    Petitioner's current federal habeas corpus counsel is directed to monitor petitioner's state habeas corpus proceeding and to advise this Court in writing immediately upon the Texas Court of Criminal Appeals' rendition of a final decision on petitioner's soon-to-be-filed state habeas corpus application containing petitioner's *Brady* and ineffective assistance claims.

4.    Pending further Order of this Court, all other proceedings in this cause shall be **STAYED** and held in **ABEYANCE**.

5.   All currently pending motions and deadlines are dismissed without prejudice to their being re-urged after the period of abeyance established by this Order is terminated.

6.   Upon receipt from petitioner's federal habeas counsel of the advisory described in numbered paragraph 3 above, this Court will issue a new Scheduling Order setting forth the deadlines for the completion of the remaining proceedings in this cause.

**IT is so ORDERED.**

SIGNED this _2ᵈ_ day of August, 2006.

FRED BIERY
United States District Judge

# EXHIBIT 5

## AFFIDAVIT OF LESLIE RIBNIK

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF HARRIS** | § |

I, Leslie Ribnik, am an attorney licensed to practice law in the State of Texas, bar number 16826330. I am over the age of 18 and competent to testify. The facts contained in this affidavit are true and based upon my own personal knowledge.

In 2002, I was appointed by the State of Texas as state habeas counsel to Robert Gene Will, II following his conviction and death sentence in *State of Texas v. Robert Gene Will, II*, Cause No. 862715, 185th Judicial District of Harris County, Texas. I represented Mr. Will in the filing of his first application for habeas corpus pursuant to Article 11.071 of the Texas Code of Criminal Procedure.

On July 17, 2013, attorney Samy Khalil showed me two documents that until then I had never seen: the Harris County Sheriff's Department Classification Division Administrative Separation Review Sheet for inmate Michael Rosario dated December 5, 2000 and a report made by Harris County Sheriff's Deputy Patricia Schifani dated December 9, 2000. On Michael Rosario's Administrative Separation Review Sheet, there is a section entitled "Reason for Separation" that states, "Made contact w/DGU to visit w/David Cruz [TS] soliciting [TS] to make hit on co-def Robt. Will (Gene)." The report by Deputy Schifani recounts her interactions with Rosario three days after the shooting, when he pointed at a mourning badge cover she was wearing "in honor of slain Deputy Barry Hill" and declared, "Do you know why you are wearing that? . . . Well, I am part of the reason you are wearing it, do you know who I am?" Before Mr. Khalil showed me these documents, I was unaware that they existed, and had never had any reason to believe that Deputy Schifani, the Harris County Jail, or David Cruz possessed this critical information about Michael Rosario and Mr. Will's case.

In preparation for filing Mr. Will's application for habeas corpus, I performed a review of all unprivileged documents in the case file maintained by the District Attorney's Office over the course of several days. My review included over twenty hours reviewing all of the materials contained in the District Attorney's file. Neither the Administrative Separation Review Sheet nor Deputy Schifani's report was among the documents in the District Attorney's file made available. Because, as habeas counsel, I was tasked with investigating potential constitutional claims such as *Brady* violations, the "hit" document and the Schifani report were precisely the types of documents I was looking for in my search of the District Attorney's file. The omission of these documents and the information contained within them precluded additional investigation. If these documents had been available to me, I would have investigated whether the documents had been produced to trial counsel, and whether, if produced, the documents had been adequately investigated or used by trial counsel in Mr. Will's defense.

1

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _6th_ day of _August_ , 2013 in Harris County, Texas.

_____
Leslie Ribnik

STATE OF TEXAS          §
                        §
COUNTY OF HARRIS        §

**BEFORE ME**, the undersigned authority, on this day personally appeared LESLIE RIBNIK, known to me to be the person whose name is subscribed to the foregoing statement and, being by me first duly sworn, *upon* oath declared that the statements contained therein are true and correct.

_____

**SUBSCRIBED AND SWORN TO** before me this the 6th day of _August_ , 2013 A.D. to certify which witness my hand and seal of office.

STEPHANIE TRUSS
Notary Public, State of Texas
My Commission Expires
September 10, 2015

2

# EXHIBIT 6



CAUSE NO. 862715

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | HARRIS COUNTY, T E X A S |
| | § | |
| ROBERT GENE WILL II | § | 185ᵗʰ JUDICIAL DISTRICT |

### SUBPOENA DUCES TECUM

**TO ANY PEACE OFFICER OF HARRIS COUNTY OR OTHER PERSON AUTHORIZED IN ACCORDANCE WITH ART. 24.01(b) C.C.P. - GREETINGS:**

Name of Person Other Than A Peace Officer To Execute Summons:

**YOU ARE HEREBY COMMANDED TO SUMMON:**

NAME:        **Custodian of Records - Disruptive Group Division**

VOCATION:    **Harris County Sheriff's Department**

LOCATION:    **Harris County Jail, 701 San Jacinto, Houston, Texas 77002**

PHONE NUMBER:    **(713)** _____

DUCES TECUM REQUEST:    **You are ordered to bring with you to court a complete copy of any and all records relating to any interviews regarding inmates Robert Gene Will II, Alan Michael Rosario or any other inmates concerning the death of Deputy Barrett Hill. These records shall include any and all information obtained from any source which directly or indirectly suggests that an individual other than defendant Robert Gene Will II shot Deputy Barrett Hill.**

The testimony of said witness is believed to be material to the defense on the trial of this case. This subpoena is returnable and the witness is ordered to appear on **September 6, 2001 at 1:30 p.m.**

if to be found in your County, to be and appear before the above designated court in and for Harris County on September 6, 2001 at 1:30 p.m. to give evidence on behalf of the State and Defendant in the above styled and numbered cause, and there to remain from day to day, and from term to term until discharged by the Court.

WITNESS my official signature on _____ **AUG 3 0 2001** _____.

CHARLES BACARISSE, District Clerk
Harris County, Texas

By _____ , Deputy

**UPON RECEIPT OF THIS SUBPOENA
PLEASE CALL DEFENSE COUNSEL,
ANTHONY OSSO - (713) 225-4444**

AUG 3 1 2001

F I L
CHARLES BACA
D

SEP 0 6 2001

Harris County, T
By _____

000085

EXHIBIT 7



CAUSE NO. 862715

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
|---|---|---|
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT GENE WILL II | § | 185ᵗʰ JUDICIAL DISTRICT |

### SUBPOENA DUCES TECUM

**TO ANY PEACE OFFICER OF HARRIS COUNTY OR OTHER PERSON AUTHORIZED IN ACCORDANCE WITH ART. 24.01(b) C.C.P. - GREETINGS:**

Name of Person Other Than A Peace Officer To Execute Summons:

**YOU ARE HEREBY COMMANDED TO SUMMON:**

NAME: **Deputy Bobby Strickland- Disruptive Group Deputy**
VOCATION: **Harris County Sheriff's Department**
LOCATION: **Harris County Jail, 701 San Jacinto, Houston, Texas 77002**
PHONE NUMBER: **(713) _____**
DUCES TECUM REQUEST: **You are ordered to bring with you to court a complete copy of any and all records relating to any interviews regarding inmates Robert Gene Will II, Alan Michael Rosario or any other inmates concerning the death of Deputy Barrett Hill. These records shall include any and all information obtained from any source which directly or indirectly suggests that an individual other than defendant Robert Gene Will II shot Deputy Barrett Hill.**

The testimony of said witness is believed to be material to the defense on the trial of this case. This subpoena is returnable and the witness is ordered to appear on September 6, 2001 at 1:30 p.m.

if to be found in your County, to be and appear before the above designated court in and for Harris County on September 6, 2001 at 1:30 p.m. to give evidence on behalf of the State and Defendant in the above styled and numbered cause, and there to remain from day to day, and from term to term until discharged by the Court.

WITNESS my official signature on _____ AUG 3 0 2001 _____.

CHARLES BACARISSE, District Clerk
Harris County, Texas

By _____ , Deputy

**UPON RECEIPT OF THIS SUBPOENA
PLEASE CALL DEFENSE COUNSEL,
ANTHONY OSSO - (713) 225-4444**



SEP 0 6 2001

030086

000094

# EXHIBIT 8

OAO89 (Rev. 7/95) Subpoena in a Criminal Case

# UNITED STATES DISTRICT COURT

SOUTHERN _____   DISTRICT OF _____   TEXAS _____

ROBERT GENE WILL

v.

NATHANIEL QUARTERMAN

**SUBPOENA IN A
CRIMINAL CASE**

Case Number: H-07-CV-1000

*RECEIVED
MAR 0 3 2009
LEGAL COUNSEL*

TO:  Harris County Sheriff's Office
Attn: Jim Faulkner
Legal counsel
1200 Baker Street
Houston, TX 77002
Fax (713) 755-5668

G  YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below, or any subsequent place, date and time set by the court, to testify in the above referenced case.
This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court. **Compliance with this subpoena may be satisfied by providing the requested items, along with a records affidavit, to the below listed counsel.**

| PLACE | COURTROOM |
|---|---|
| United States Courthouse<br>515 Rusk Avenue<br>Houston, TX 77002 | Judge Keith Ellison- Room 8613 |
| | DATE AND TIME |
| | INSTANTER |

G  YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):

ALL inmate classification records, as well as, but not limited to ALL DISCIPLINARY RECORDS, ANY EVALUATIONS AND NOTES, and RECORDS INDICATING THE LOCATION PERTAINING TO ANTONIO RIOJAS  [00542145, 01037881]AND MICHAEL ALAN ROSARIO [01492582] after the date of December 1, 2000 while they were incarcerated in the Harris County jail.

**Records are to include,** but not limited to all disciplinary records, progress reports/notes, assessments, evaluations, test results, visitor logs **and PIN packet.**

**PLEASE ATTACH A BUSINESS RECORD AFFIDAVIT ALONG WITH THE REQUESTED RECORDS.**

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT | DATE |
|---|---|
| **MICHAEL N. MILBY** | **FEB 2 7 2009** |
| (By) Deputy Clerk | |

# EXHIBIT 9

## AFFIDAVIT OF ANTHONY OSSO

**STATE OF TEXAS**          §

**COUNTY OF HARRIS**       §

I, Anthony Osso, am an attorney licensed to practice law in the State of Texas, bar number 15336800. I am over the age of 18 and competent to testify. The facts contained in this affidavit are true based upon my own personal knowledge. My law practice, which focuses on criminal defense, is located at 440 Louisiana St, Suite 1125, Houston, Texas 77002-1638. In 2001 and 2002, I along with co-counsel David Cunningham, represented Robert Gene Will, II as defense counsel in *State of Texas v. Robert Gene Will, II*, Cause No. 862715, 185th Judicial District of Harris County, Texas. Mr. Will was charged with capital murder for the shooting of Deputy Barrett Hill. After a trial in 2002, Mr. Will was convicted and sentenced to death.

Our key defense theory at trial was that Michael Rosario shot Deputy Hill. Accordingly, the main focus of our investigation and pretrial discovery was to gather evidence about Rosario's actions before and after the murder. Evidence implicating Rosario in Deputy Hill's murder was essential to Mr. Will's defense. In an effort to develop and present our defense we sought to obtain all information and documents pertaining to Rosario's actions and statements through the use of discovery motions and subpoenas. In particular I served Deputy Bobby Strickland and the Custodian of Records for the Harris County Sheriff's Department Disruptive Group Unit with subpoenas to produce "Any and all records relating to any interviews regarding inmates Robert Gene Will II, Alan Michael Rosario or any other inmates concerning the death of Deputy Barrett Hill. These records shall include any and all information obtained from any source which directly or indirectly suggests that an individual other than defendant Robert Gene Will II shot Deputy Barrett Hill." Several follow up hearings were held before Judge Brown regarding Strickland's compliance with the defense subpoena and the production of the requested materials.

The defense first discussed with the court our attempts to obtain the subpoenaed information and documents during a hearing held September 6, 2001. At that time, we advised the court that we believe Deputy Strickland and the Disruptive Group Unit was in possession of *Brady* materials and that we intended to question Strickland under oath regarding his failure to comply with our subpoena. There was reference made during that hearing to two inmates named Scott Craig and Rene Gonzales having provided possible information to the Disruptive Group Unit. The defense made it clear during this hearing that we were seeking any and all interviews of inmates related to this case.

Then, in a follow up pretrial hearing held on September 11, 2001, Strickland admitted that he had not produced any documents to defense counsel and indicated that he had no intention of producing jail records containing "confidential information he receives from inmates." During his testimony Strickland admitted to interviewing at least 3 inmates concerning the defendant's case. The names of Scott Craig and Rene Gonzales were known to the defense, but Strickland continued to refuse to provide any information about additional inmate interviews. At that point, the court

-1-

ordered Strickland to produce certain of his files for in camera review.

On September 21, 2001, another pre-trial hearing was held to address our discovery efforts and compliance dates. Again, the court was advised by the defense that we were attempting to obtain all information and documents pertaining to any inmate interviews that would be relevant to Will's case. Review of the transcript from this hearing suggests that the court had possession of in camera documents and that as of that date the State through Strickland had not yet complied with our subpoena. At issue remained the identity, documents, and information regarding an unnamed inmate or inmates.

On November 15, 2001, another pre-trial hearing was held to discuss discovery issues still outstanding. At that time, the State produced for inspection some documents provided by the DGU about a threat Rosario made to another inmate which was clearly unrelated to our case. I reviewed the documents made available by the State and advised the court that based on my review the documents involved a threat made upon another inmate which was unrelated to our case. At that time, we were assured that we had received or been permitted to inspect all *Brady* material. Based on the results of our discovery attempts, we followed up by investigating both Scott Craig and Rene Gonzales. It was apparent from my review of the documents produced during the November 15th hearing that there was no need to further investigate Rosario's threat upon another inmate that was totally unrelated to our case.

On August 5, 2013, attorney Samy Khalil asked me to review a document entitled Harris County Sheriff's Department Classification Division Administrative Separation Review Sheet for Michael Rosario dated December 5, 2000. I advised Mr. Khalil that this document had never been produced in response to our discovery motion or subpoenas and that the information contained therein would have been considered material and relevant to our defense. It appears from the document that an inmate by the name of David Cruz, a Texas Syndicate member, was solicited by Michael Rosario to have Robert Gene Will, II killed. Clearly, any attempts by Rosario to put a hit on Will would have been significant in furthering our defensive theory at trial that Rosario was responsible for the shooting of Deputy Hill. This information would have allowed the defense to show the jury that Rosario attempted to eliminate the only eyewitness to the shooting, which would have been consistent with our theory throughout the trial.

We were assured that we had received or been permitted to inspect all *Brady* materials. However, the Administrative Separation Review Sheet or information about Rosario trying to have Will killed was never made available to the defense. In short, this evidence, had it been disclosed, would have materially strengthened Mr. Will's defense and undermined the prosecution's case.

I declare under penalty of perjury that the forgoing is true and correct.

Executed this 6th day of __August__, 2013 in Harris County, Texas.



_____

**ANTHONY OSSO**

**STATE OF TEXAS**          §

**COUNTY OF HARRIS**          §

BEFORE ME, the undersigned authority, on this day personally appeared ANTHONY OSSO, known to me to be the person whose name is subscribed to the foregoing statement and, being by me first duly sworn, upon oath declared that the statements contained therein are true and correct.

> NOTARY PUBLIC
> STATE OF TEXAS
> Stephanie Renee Plummer
> My Commission Expires
> 01/20/2015

_____

SUBSCRIBED AND SWORN TO before me this the 6th day of August 2013 to certify which witness my hand and seal of office

-3-

# EXHIBIT 10

## AFFIDAVIT OF DAVID CUNNINGHAM

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF HARRIS** | § |

My name is David Cunningham. I am over the age of 18 and competent to testify. The facts contained in this affidavit are true and based upon my own personal knowledge. Together with Anthony Osso, I was appointed as defense counsel in the capital murder trial of Robert Gene Will, II, styled *State of Texas v. Robert Gene Will, II*, Cause No. 862715, 185th Judicial District of Harris County, Texas. The trial took place in 2002. I have a law office at 2814 Hamilton St., Houston, TX 77004. My Texas State Bar number is 05234400.

On July 31, 2013, attorney Samy Khalil showed me the Harris County Sheriff's Department Classification Division Administrative Separation Review Sheet for Michael Rosario dated December 5, 2000. The document indicates that Michael Rosario's "Reason for Separation" from the general prison population was that he "made contact w/DGU to visit w/David Cruz [TS] soliciting [TS] to make hit on co-def Robt. Will (Gene)." Mr. Khalil also showed me the report of Harris County Sheriff's Deputy Patricia Schifani, dated December 9, 2000, regarding her conversation with Michael Rosario in which Rosario proclaimed that he was "part of the reason [she was] wearing [a mourning badge cover in honor of Deputy Hill]," and "appeared to take pleasure in his notoriety" as he bragged, "I'm high-profile! Do you know who my father is?" I had not seen either of these documents or otherwise been made aware of the facts contained in the documents until my discussions with Mr. Khalil. I am confident that I would remember these documents if I had seen them before because our main defense strategy was to establish that Michael Rosario, the son of a Houston Police Department officer, murdered Deputy Hill.

I have searched my files and reviewed all the relevant instruments produced by the Harris County District Attorney through pre-trial discovery. Although we had sought precisely these types of records before trial by subpoena and motion and been told by the District Attorney's Office that all *Brady* material had been produced, these documents were never provided or shown to us.

The District Attorney's Office purportedly had an open file policy at the time of my representation of Mr. Will. I am familiar with that policy and took the opportunity to inspect the District Attorney's file on multiple occasions leading up to trial. At no time were the above-mentioned documents present in the portions of my client's file that were "open" to me or Mr. Osso for inspection. The "open file" policy of the District Attorney's office did not extend to the files of co-defendants or documents that the District Attorney or the Harris County Jail determined could potentially relate to ongoing gang investigations.

In August 2001, we subpoenaed the Harris County Jail Disruptive Group Unit ("DGU") and Deputy Strickland (the head of DGU) for documents relating to Will and Rosario, and any exculpatory evidence, specifically "any and all information obtained from any source which directly or indirectly suggests that an individual other than defendant shot Deputy Barrett Hill." A key part of our trial strategy was to show that Rosario had bragged to others that he was responsible for Deputy Hill's death. The DGU produced some documents to the District Attorney, but none to us. After the Harris County Sheriff's Department refused to produce the documents, we subpoenaed Deputy Strickland to

testify in a pre-trial hearing on September 11, 2001. Strickland admitted that he had not produced any documents to defense counsel and was openly hostile to producing jail records containing "confidential information he receives from inmates." The court ordered Strickland to produce certain of his files for in camera review. In November 2001, the State produced for inspection some documents provided by the DGU about a threat Rosario made in prison. Mr. Osso reviewed the documents and determined that they concerned matters wholly unrelated to Mr. Will's case. In short, neither the "hit" document nor the Schifani report discussed above were produced to counsel in spite of our efforts to secure such documents.

If I had known about these documents and the facts contained within them, I would have conducted an investigation into Michael Rosario's attempted murder of my client. I would have called David Cruz in order to show the jury that Rosario's "hit" on Rob Will following the shooting was Rosario's attempt at a cover up -- the actions of a guilty man attempting to eliminate a witness and not an innocent bystander as portrayed by the prosecution. I would have called additional investigating officers and introduced the separation review sheet in cross examination to undermine the reliability of the State's investigation. In addition, I would have called Deputy Schifani to testify as to her conversation with Michael Rosario and his demeanor to further contradict the prosecution's portrayal and to lend credence to Victor Coronado's testimony that Rosario confessed to murdering Deputy Hill. In sum, had this evidence been disclosed, it would have substantially enhanced our case and diminished the prosecution's.

I declare under penalty of perjury that the foregoing is true and correct.


Executed this ___7___ day of ___August___, 2013 in Harris County, Texas.


David Cunningham

2

**STATE OF TEXAS**      §
                               §

**COUNTY OF HARRIS**     §

     **BEFORE ME**, the undersigned authority, on this day personally appeared DAVID CUNNINGHAM, known to me to be the person whose name is subscribed to the foregoing statement and, being by me first duly sworn, *upon* oath declared that the statements contained therein are true and correct.



Notary public in and for
Harris County, Texas

     **SUBSCRIBED AND SWORN TO** before me this the ___7___ day of __August__ , 2013 A.D. to certify which witness my hand and seal of office.

BERTHA RUTH NARVAEZ
Notary Public, State of Texas
My Commission Expires
December 05, 2016

3

EXHIBIT 11

1         APPELLATE NO. _____
                REPORTER'S RECORD
2              VOLUME 3 OF 34 VOLUMES
             TRIAL COURT CAUSE NO. 862715
3

4   THE STATE OF TEXAS        )  IN THE DISTRICT COURT
                              )
5   V.                        )  HARRIS COUNTY, TEXAS
                              )
6   ROBERT GENE WILL, II      )  185TH JUDICIAL DISTRICT

7

8

9

10                    **PRETRIAL MOTIONS**

11

12

13        On September 11, 2001, the following proceedings

14   came on to be held in the above-titled and numbered

15   cause before the Honorable Susan Baetz Brown, Judge

16   Presiding, held in Houston, Harris County, Texas.

17        Proceedings reported by computerized stenotype

18   machine.

19

20

21

22        Carrie Scardaville Logan, Texas CSR No. 3150
          Official Court Reporter - 185th District Court
23                     1201 Franklin
                  Houston, Texas  77002
24

25                    COPY

*R.W. Strickland – September 11, 2001*
*Direct Examination by Mr. Osso*

1      A.    Yes, basically.

2      Q.    That's your title?

3      A.    Yes.

4      Q.    In layman's terms, that's simply you stay

5   on top of gang-related activity or inmates that might

6   be affiliated with certain gangs?

7      A.    Yes.

8      Q.    Okay.  I take it that's -- for what purpose

9   do we have someone in your position in the Harris

10  County Jail?

11     A.    To make sure that any inmates and the staff

12  working in that facility work in a safe environment

13  and any kind of gang-related activities or anything

14  that cause a problem to the security and safety of

15  the institution is looked at and addressed.

16     Q.    Okay.  In response to this subpoena when

17  you received it, what did you do as far as the

18  records that were requested?  Can you explain to us

19  what you did?

20     A.    I submitted the records as per -- to, you

21  know, the courts or to the -- through the proper

22  channels.

23     Q.    When you say "the proper channels," so our

24  record is clear, you provided the District Attorney's

25  Office with some records, correct?

7

1        A.    Right.

2        Q.    Okay.  To date, you have not contacted me

3   in response to your subpoena, have you?

4        A.    No.

5        Q.    Okay.  You haven't provided me with any

6   records, right?

7        A.    No.

8        Q.    Okay.  I first want to address your

9   attention to any meetings that you have had with

10  Robert Will.  Have you met at the jail with my

11  client?

12       A.    Yes.

13       Q.    And on how many occasions have you spoken

14  with my client regarding either his case -- well,

15  strike that.

16              How many times have you spoken with my

17  client?

18       A.    Taking a guesstimate and a pretty accurate

19  guesstimate, no more than seven -- no more than half

20  a dozen times.

21       Q.    Approximately six or seven times?

22       A.    Correct.

23       Q.    Okay.  Do you have specific dates when you

24  met with my client?

25       A.    Not -- no.

10

1      Q.    Okay.  Have you ever made copies of the

2   contents of the file?

3      A.    I believe one part of it, yes.

4      Q.    Have you ever made copies of the contents

5   of the entire file?

6      A.    No.

7      Q.    Okay.  So, then, I take it from your

8   response that the contents of that entire file has

9   not been turned over to either the Court or the

10  District Attorney as of today's date, correct?

11     A.    Correct.

12     Q.    Okay.  You would agree with me that the

13  subpoena you received, essentially the Court is

14  ordering you or has ordered you to turn over any and

15  all records concerning interviews with my client,

16  doesn't it?

17     A.    I think the specifics of it indicate

18  something regarding him and other people and that

19  kind of thing pertaining to his case.  I have nothing

20  pertaining to his case.

21     Q.    Well, let me ask you.  In addition to my

22  client -- I'm sorry.

23           MR. OSSO:  Your Honor, first of all,

24  at this time I'm going to ask he be required to

25  respond to his subpoena.  He obviously has a file,

1   have an order on file that all evidence in this case

2   be preserved.  I just want to bring that to the

3   witness' attention.

4                THE COURT:  I'm sure that that's not

5   an issue.  I'm sure he's going to walk over, get that

6   and bring it right back to me.  I'm not too worried

7   about that.  All right.

8                **DIRECT EXAMINATION (CONTINUED)**

9        Q.    (BY MR. OSSO) Now, you conducted some other

10  interviews with other individuals regarding my

11  client, correct?  In other words, you spoke to other

12  inmates about my client?

13       A.    Yes.

14       Q.    Okay.  Do you know the names of those

15  individuals?

16       A.    Yes.

17       Q.    Could you tell me what they are?

18       A.    Well, those are pretty much a bit of a

19  confidential type of information because they're

20  inmates that talk to me on a confidential record

21  and --

22       Q.    Well, one of them --

23                THE COURT:  I think we're getting

24  into -- you know what?  Here's -- my great concern is

25  if those guys are still in custody and they're housed

```
                    R.W. Strickland - September 11, 2001
                        Direct Examination by Mr.  Osso
```

1   with your client -- how about if he submits a list?

2           MR. OSSO:  I'm not going to ask him --

3   I certainly wasn't going to go into the conversations

4   they had.  I was going to limit my questions to who

5   did you interview and did you maintain records of

6   your interview or, you know, notes from your

7   interviews and again ask that he bring those records

8   with him for the Court to review.

9           THE COURT:  You want to make an

10  objection?

11          MS. PARSONS:  Well, I do object to

12  that because I think it does threaten the safety of

13  certain individuals to have that publicly placed into

14  the record.  I have no problem with --

15          THE COURT:  And I have that very same

16  concern.  I don't know the best way to handle that,

17  but I don't know what those individuals told this

18  deputy and I certainly don't want there to be a

19  record floating around out there when there's some

20  allegations of gang activity.  I'm not saying your

21  client would do anything about it at all, but I don't

22  know what -- if he is affiliated with a gang, what

23  other folks might do with that information.

24          MR. OSSO:  Can I rephrase my question?

25      Q.   (BY MR. OSSO) How many different

# EXHIBIT 12

1

*Trial on Merits*
*January 16, 2002*

1          APPELLATE NO. 74,306
              REPORTER'S RECORD
2        VOLUME 26 OF 34 VOLUMES
          TRIAL COURT CAUSE NO. 862715
3

4    THE STATE OF TEXAS        )  IN THE DISTRICT COURT
                               )
5    V.                        )  HARRIS COUNTY, TEXAS
                               )
6    ROBERT GENE WILL, II      )  185TH JUDICIAL DISTRICT

7

8

9    _____

10                    **TRIAL ON MERITS**

11   _____

12

13        On January 16, 2002, the following proceedings

14   came on to be held in the above-titled and numbered

15   cause before the Honorable Susan Baetz Brown, Judge

16   Presiding, held in Houston, Harris County, Texas.

17        Proceedings reported by computerized stenotype

18   machine.



19

20                    MAR 1 8 2002

21

22   Carrie Scardaville Logan, Texas CSR No. 3150
         Official Court Reporter – 185th District Court
23                    1201 Franklin
                 Houston, Texas  77002

24

25                    COPY

1   at the pictures, once again, in that car, what they

2   tell you about this guy.  Man, he's going to haul it.

3                 Now, what he does for two hours before

4   he's finally captured three and a half hours later in

5   Brenham, we don't know.  But we do know that he stops

6   off in Hempstead and takes the license plate from

7   Ms. Duncan's car.  There's blood on the trunk of the

8   car.  He's using his hands to do that.  He's using

9   his hands.  He's touching more objects.  Those

10  particles are falling off.  They only last, Robert

11  Reynolds said, for two hours.  So, at the most, by

12  8:30 in the morning, we would -- if we had been able

13  to catch him that fast, maybe the residue would still

14  be there to show you that he shot him on those

15  gloves.  Maybe not still, according to what Robert

16  Reynolds said.  But we catch him three and a half

17  hours later.

18                 THE COURT:  Ms. Parsons, you have five

19  minutes.

20                 MS. PARSONS:  So, you know, when you

21  look at the level of desperation, who is it?  Is it

22  Rosario who is seen walking later in the morning

23  between 8:00 and 9:00 down the area shadow boxing?

24  Is it -- are those the actions of somebody who has

25  just executed one of the finest people in this world?

1    You know, is it -- are those the

2  actions of somebody who's just killed a police

3  officer by asking little Ms. Rosa Carpenter for some

4  money?  Or is it the guy who is not going to get

5  caught?  He's going to haul it.  He hauls it behind

6  those buildings through the field and when he sees

7  Officer Hill has him, he's compliant.  He's compliant

8  until Officer Hill's gun is holstered.  And when

9  Officer Hill brings out the handcuffs that are lying

10  by his body, that's when this defendant chooses to

11  act.  And as soon as that right arm is out of

12  commission, totally out of commission, the acts of

13  the desperate man continue because he's not going to

14  let that officer survive to be able to be a witness

15  against him.  He makes sure he is dead.  Three fatal

16  shots to the head.

17    He runs across the field and, in

18  another act of desperation, pulls Cassandra Simmons

19  out of the car.  When she won't come, he said:  I

20  just shot a cop.  I just shot a policeman.  Get out.

21  And he drives off.

22    When you look at all the facts in the

23  case, the puzzle is so clear.  This is the man who

24  killed Deputy Barrett Hill.  And I ask you to find

25  him guilty of capital murder.